**PAVLIDES, Appellee,**

v.

**NILES GUN SHOW, INC., Appellant.**

[Cite as *Pavlides v. Niles Gun Show, Inc.* (1996), 112 Ohio App.3d 609.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 1995CA00207.

Decided June 10, 1996.

610

*Allen Schulman, Jr.* and *Paul O. Scott,* for appellee.

*Ralph F. Dublikar,* for appellant.

READER, Judge.

Appellant Niles Gun Show, Inc. appeals a judgment of the Stark County Common Pleas Court awarding appellee Gregg L. Pavlides $750,000 in compensatory damages and $12,000 in punitive damages upon a jury verdict, and raises the following assignments of error:

## ASSIGNMENTS OF ERROR

"I.   The trial court erred in holding as a matter of law that the defendant, Niles Gun Show, had a legal duty to the plaintiff where the plaintiff alleged that he was intentionally shot by a teenager who had allegedly stolen a gun from the defendant's gun show and where the shooting occurred ten hours later and at a place over five miles away from the premises where the gun was allegedly stolen and where the defendant conducted business activity.

"II.   The trial court erred in failing to grant defendant's motion for directed verdict made at the close of the plaintiff's case and again at the close of all the evidence on the issues of duty, foreseeability, and proximate cause.

"III.   The trial court erred in refusing to hold that the intentional, deliberate shooting of the plaintiff by a third party was an intervening and superseding cause of the plaintiff's injuries.

"IV.   The trial court erred in not granting judgment in favor of defendant, the Niles Gun Show, Inc., pursuant to Ohio Civil Rules of Procedure 49 and 58, where the jury answered interrogatory 'G' to the effect that the shooting of the plaintiff was an intervening and superseding cause of his injury.

"V.   The trial court erred in overruling defendant's motion for directed verdict and allowing the jury to consider and award punitive damages on the basis that the evidence construed most strongly in favor of the plaintiff was legally insufficient to establish a proper claim for punitive damages.

"VI.   The trial court erred in awarding judgment for punitive damages where the jury's interrogatory finding the defendant negligent and a subsequent interrogatory finding that the defendant showed a conscious disregard for the rights of the plaintiff were inconsistent.

"VII.   The trial court erred in entering judgment for the plaintiff for the full amount of damages and in not reducing the judgment by fifty percent based upon the jury's finding of comparative negligence on the part of the plaintiff.

"VIII.   The judgment entered by the trial court in favor of the plaintiff violates the defendant's constitutional rights to due process of law, equal protection, and separation of powers.

"IX.   The trial court erred in permitting plaintiff's expert, William Goodman, to give opinion testimony as to issues of standard of care, foreseeability, proximate cause, and punitive damages."

Appellant is an Ohio corporation engaged in the business of sponsoring and promoting shows at which a variety of items, primarily firearms, are displayed and offered for sale by independent vendors, who rent space from appellant. Richard Walters is the sole stockholder and principal officer of appellant. Walters provided each vendor at his shows with a written set of rules and regulations governing their activities.   If the vendors violated these regulations, Walters could require them to leave.

Appellant retained the right to refuse admission to any person wishing to enter the show.   Appellant had a policy of refusing admission to unsupervised minors. Although several thefts of firearms had occurred at appellant's shows, and appellant had knowledge of the previous thefts, vendors were not required to secure their weapons.   On January 18 and 19, 1992, appellant promoted a gun show at the Canton Civic Center.   During the early afternoon of January 19, 1992, Jayson Troyer, age thirteen, Edward Tilley III, age sixteen, and Brian Limbacher paid the admission fee and entered the gun show.   No one questioned them about their ages, or asked for identification.   The three boys walked around the show for approximately an hour.   While they were at the show, several vendors tried to sell the boys firearms and ammunition.   The boys pocketed several knives and brass knuckles.   The boys then called their friend, Perry Wiegriff, age fifteen, and left the show to pick him up.

Upon returning to the show, Troyer, Tilley, and Limbacher re-entered the show, showing the person collecting the admission fee the stamps on their hands.

Wiegriff paid the admission fee and entered the show. Again, the boys were not questioned about their ages, or asked for identification. Inside the show, the boys separated into two groups and began stealing firearms. According to the boys, most of the firearms were not secured, making them easy to steal. Wiegriff stole a .25 automatic handgun. Troyer stole two handguns, a .22 derringer and a .38 Rhome. Each time the boys stole a firearm, they left the show to store the gun and again re-entered by showing their stamps. Later in the afternoon, a vendor sold one of the boys .38 caliber hollow-point ammunition. After approximately two and one-half hours, the boys left, and went to Tilley's home.

At Tilley's home, Wiegriff, Troyer, and Tilley inhaled gasoline fumes. They then went to a restaurant to eat. Upon leaving the restaurant, they decided to break into cars parked along the street. Wiegriff discovered a car with keys and took the car. After driving around, Wiegriff and Tilley dropped Troyer off. Troyer gave Wiegriff the .38 Rhome and the ammunition. When it began to snow, Tilley and Wiegriff began purposely sliding the car into trash cans for amusement.

Appellee witnessed the boys' activities from his house. He went outside and was able to read part of the license plate number. He then got into his car and followed the boys. Another driver, Tom Snedeker, also began following the boys. Shortly thereafter, the boys lost control of the car and went off the road. Pavlides and Snedeker stopped their cars and approached the boys. As Pavlides neared the car, Wiegriff handed Tilley the gun. Tilley fired at Pavlides, and then shot Snedeker. The boys then drove away. Appellee Pavlides was shot twice. One bullet punctured his lung, and the other lodged in his spinal cord rendering him a paraplegic.

On July 27, 1992, appellee filed the instant action against appellant, alleging negligence and wanton and willful misconduct. Appellee sought both compensatory and punitive damages. The trial court initially entered summary judgment in favor of appellant, finding that appellant owed no duty to appellee. This court reversed the summary judgment, finding that appellant owed a duty to the general public to prevent unsupervised minors' entry into a gun show where unsecured firearms are displayed. This court found that reasonable minds could find that appellant's negligence proximately caused appellee's injury, and that the criminal act of Tilley was not a superseding cause that broke the causal connection. This court found that the issue of punitive damages should be submitted to the jury, as reasonable minds could conclude that appellant's conduct constituted a conscious and deliberate disregard of the interests of others. In accordance with our opinion, we remanded the case for jury trial.

*Pavlides v. Niles Gun Show, Inc.* (1994), 93 Ohio App.3d 46, 637 N.E.2d 404, motion to certify overruled (1994), 69 Ohio St.3d 1488, 635 N.E.2d 43.

The case proceeded to jury trial. The trial court overruled appellant's motion for directed verdict. The jury returned a verdict in favor of appellee and against appellant in the amount of $750,000 in compensatory damages and $12,000 in punitive damages. The court entered judgment in accordance with the verdict.

## I, II, & III

Appellant argues that the court erred in submitting the case to the jury, as it was entitled to judgment as a matter of law on the issues of duty and proximate cause. Appellant concedes that these issues were decided by this court in our first opinion in this case. However, appellant argues that the trial court should nonetheless have directed a verdict, because the law has changed, and the because our first opinion was clearly erroneous.

The doctrine of law of the case requires that after a reviewing court has reversed and remanded a cause for further action in the trial court, and the unsuccessful party does not prosecute review to the Supreme Court, the pronouncement of the law by the intermediate court becomes the law of the case and must be followed by the lower court in subsequent proceedings in that case. *Stemen v. Shibley* (1982), 11 Ohio App.3d 263, 265, 11 OBR 441, 444–445, 465 N.E.2d 460, 463–464. A trial court is without authority to resolve the law at variance with the mandate of the court of appeals upon a former appeal of the same case. *Id.* The doctrine of the law of the case is necessary, not only for consistency of result and the termination of litigation, but to preserve the structure of the judiciary as set forth in the Ohio Constitution. *Id.* Absent extraordinary circumstances, such as an intervening decision by the Ohio Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case. *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 11 OBR 1, 462 N.E.2d 410, syllabus.

Further, the doctrine of the law of the case is applicable to subsequent proceedings in the reviewing court. *Nolan* at 4, 11 OBR at 3–4, 462 N.E.2d at 413–414. Thus, the decision of the appellate court in a prior appeal must ordinarily be followed in a later appeal in the same case and court. *Id.* An appellate court may choose to re-examine the law of the case it has itself previously created if that is the only means to avoid injustice. *Weaver v. Motorists Mut. Ins. Co.* (1990), 68 Ohio App.3d 547, 549, 589 N.E.2d 101, 102.

Appellant relies on *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 652 N.E.2d 702, for the proposition that the law has changed regarding the liability of a business owner for the criminal act of a third party. The *Simpson*

case was decided after judgment was entered following trial in the instant action. Thus, *Simpson* is not an intervening change in the law. As the *Simpson* case was not an intervening decision by the Supreme Court, the trial court did not have authority to decide the law at variance with our first opinion.

Further, the *Simpson* case is inapplicable to the instant action. *Simpson* was decided on the basis of premises liability and the duty owed by a grocery store owner to a business invitee. Our first opinion in the instant action did not base appellant's duty on a theory of premises liability, but rather developed a duty pursuant to common law under the unique situation posed by the instant action, dealing with an inherently dangerous business. Appellant has not demonstrated that we must reconsider our prior opinion in order to avoid a manifest injustice. Thus, we decline to reconsider our prior opinion in this matter.

The doctrine of the law of the case precluded the trial court from directing a verdict on the issues of duty, proximate cause, and superseding intervening cause.

Assignments of Error I, II, and III are overruled.

## IV

■ Appellant argues that the court erred in sending the jury back for further deliberations after discovering that the jury's interrogatory answer regarding intervening cause was irreconcilable with the general verdict.

Civ.R. 49(B) provides in pertinent part:

"When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."

Appellant essentially argues that the trial court abused its discretion because the court should never have submitted the case to the jury in the first instance. As discussed above, the doctrine of the law of the case prevented the court from entering a directed verdict based on the doctrine of intervening cause. Appellant has not demonstrated abuse of discretion.

The fourth assignment of error is overruled.

## V

Appellant argues that the trial court erred in failing to direct a verdict on the issue of punitive damages.

Again, the issue is governed by the doctrine of the law of the case.

■ For the first time at oral argument, appellant argued that the law changed regarding the standard for awarding punitive damages. Absent proof of a defendant's subjective knowledge of the danger posed to another, a punitive damages claim based on the "conscious disregard" theory of malice is not warranted. *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 659 N.E.2d 1242, syllabus. Like *Simpson, supra,* the *Malone* case is not an intervening change in the law, as it was not decided until February 1996. As this case was not available to the trial court at the time it entered its judgment overruling the motion for directed verdict, appellant has not demonstrated that the trial court erred.

Once again, we decline to reconsider our prior opinion on this issue. The body of the opinion in *Malone* does not indicate that the element of "subjective knowledge" is a change in the law, but rather is a rephrasing of the requirement set out in *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174, 1175–1176, that a party possess knowledge of the harm that might be caused by his behavior. *Malone,* 74 Ohio St.3d at 446, 659 N.E.2d at 1247–1248. This court cited *Preston* in its first opinion concerning punitive damages; thus, this court was aware of the requirement that appellant possess knowledge of the harm that could be caused. Thus, we conclude that the law of the case required the court to send the issue of punitive damages to the jury.

Further, while appellant objected to the issue of punitive damages being submitted to the jury, appellant did not request that the court define "actual malice" in its jury instructions to require subjective knowledge of the harm.

The fifth assignment of error is overruled.

## VI

Although this assignment of error raises a separate issue from that raised in Assignment of Error V, appellant did not separately argue this assignment in its brief. Pursuant to App.R. 12(A)(2), this court may disregard any assignment of error not argued separately in the brief.

■ Nonetheless, we find the assignment of error to be without merit. The jury's interrogatory finding that appellant was negligent and the jury's interrogatory finding that appellant acted with conscious disregard to the rights of appellee are not inconsistent. The interrogatories required the jury to find appellant negligent before the jury even could reach the issue of conscious disregard. If the jury found that appellant was not negligent, it was required to enter a general verdict in favor of appellant.

The sixth assignment of error is overruled.

## VII

Appellant argues that the court erred in not reducing the award of compensatory damages based on the jury's finding that appellee was fifty percent negligent.

■ The jury made a finding of actual malice on the part of appellant. A finding of actual malice negates a setoff for damages under Ohio's comparative negligence law. *Wightman v. Consol. Rail Corp.* (1994), 94 Ohio App.3d 389, 398, 640 N.E.2d 1160, 1165–1166, motion to certify overruled (1994), 70 Ohio St.3d 1442, 638 N.E.2d 1044.

The seventh assignment of error is overruled.

## VIII

■ *Due Process:* Appellant essentially restates its argument raised in Assignment of Error I that appellant owed no duty to appellee. Appellant argues that it is unable to properly ascertain the standard of care. Appellant argues that submitting the issue of negligence to the jury denied it due process, as the duty established in the instant action renders appellant an insurer of the general safety of the general public.

As discussed in Assignment of Error I, the trial court did not err in submitting the issue of negligence to the jury. The duty as framed in our first opinion did not render appellant an insurer of the general safety of the general public, but was tailored to the specific activity in which appellant is engaged. Appellant has not demonstrated a violation of due process.

■ *Equal Protection:* Appellant argues that the trial court's judgment requires it to provide "police protection" for the benefit of the general public and, thus, unconstitutionally treats it differently from other business owners. The trial court's judgment did not violate equal protection. The court merely applied the general common law of negligence, which is applicable to all businesses in this state. As to the issue of duty, the distinction created between the gun show operation and other businesses was rationally based on the particular and unique risk associated with the operation of a gun show.

■ *Separation of Powers:* Appellant argues that the court's judgment constituted an unlawful usurpation of the General Assembly's power to regulate firearms.

The court was not attempting to regulate firearms. Rather, the court was merely applying the common-law principles of negligence to appellant's particular

operation, which happened to involve firearms. Appellant has not demonstrated any violation of the doctrine of separation of powers.

The eighth assignment of error is overruled.

## IX

██ Appellant argues error in admitting the expert testimony of William Goodman. Appellant argues that Goodman was not properly qualified as an expert. He further argues that the subject of Goodman's testimony was not a proper subject for expert testimony and that Goodman testified beyond his expertise.

Error may not be predicated upon a ruling admitting evidence unless a timely objection or motion to strike appears in the record, stating the specific ground of the objection. Evid.R. 103(A)(1). Appellant frequently objected to Goodman's testimony and moved to strike, arguing specifically as to the form of the questions, and that Goodman's testimony was not based on a standard applicable to the industry, but rather to his particular way of conducting business. However, appellant never specifically objected based on any of the grounds raised in this assignment of error. Any error is, therefore, waived.

We have reviewed the entire testimony of the expert and do not find any plain error in the admission of Goodman's testimony.

The ninth assignment of error is overruled.

The judgment of the Stark County Common Pleas Court is affirmed.

*Judgment affirmed.*

WILLIAM B. HOFFMAN, J., concurs.

REECE, J., concurs in part and dissents in part.

JOHN W. REECE, J., of the Ninth Appellate District, sitting by assignment.

REECE, Judge, *concurs in part and dissents in part.*

In most cases with this procedural posture, that is, where the court has ruled earlier and the majority of the members of the court are in agreement, I would probably concur in the result based primarily on the law of the case. However, because I believe that this case presents precedent for far-reaching, undesirable results, I must dissent. I believe this court should revisit its earlier decision and reverse itself. *Weaver v. Motorists Mut. Ins. Co., supra.*

First, I would sustain Assignments of Error I, II, and III. The law of Ohio, as pronounced by the Supreme Court, is clear and controlling. In *Simpson v. Big Bear Stores Co., supra,* the court reiterated its earlier holding in *Littleton v.*

*Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449, 454–455, adopting Sections 314 and 315 of 2 Restatement of the Law 2d, Torts (1965). Section 315 provides:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

"(b) a special relation exists between the actor and the other which gives to the other a right to protection."

Section 314 states:

"The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

It is clear that no special relationship existed between the plaintiff and the defendant in this case. Therefore, to find some duty on the part of defendant is to extend the concept of imposing financial liability for the criminal conduct of a third person to new heights. The courts simply cannot find ways in every tragic case to satisfy ever-increasing financial demands.

The majority seems to distinguish *Simpson* and the instant case on some "premises liability" concept. However, the plaintiff in *Simpson* was off the premises of the defendant. In the instant case, the plaintiff was not only never on the defendant's premises, but he was injured miles away by a thief and would-be murderer.

Additionally, I would reverse, at the very least, on Assignments of Error V, VI, and VII, as they relate to the punitive damages award.

Once again, the Ohio Supreme Court has spoken and the law is clear. In *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 659 N.E.2d 1242, the syllabus reads:

"Absent proof of a defendant's subjective knowledge of danger posed to another, a punitive damages claim against that defendant premised on the 'conscious disregard' theory of malice is not warranted."

The court went on to say:

"As Chief Justice Moyer noted in *Preston* [*v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174], an award of punitive damages based on conscious disregard malice requires 'a positive element of conscious wrongdoing* * *. This element has been termed conscious, deliberate, or intentional. It requires the party to

possess knowledge of the harm that might be caused by his behavior.'" *Malone* at 446, 659 N.E.2d at 1247–1248.

There is simply a failure of proof that the defendant's actions in this case were either conscious, deliberate, or intentional wrongdoings.

It follows that if the punitive damage award is not warranted then, at least, the compensatory award should be reduced by the comparative negligence findings.

I would reverse on Assignment of Error IX because I believe that if it is not an example of the extension of expert testimony into "junk science," then the so-called expert testimony is totally uncalled for.

I concur with the overruling of Assignments of Error IV and VIII.