DECISION AND JUDGMENT ENTRY
Plaintiffs-Appellants Mark M. Layne and James W. Hansberry appeal from the judgment of the Ross County Court of Common Pleas which granted, on remand from a previous appeal to this Court, the motion for summary judgment of Appellee Westfield Insurance Company.
Appellants argue, inter alia, that the Supreme Court of Ohio issued a decision, subsequent to the release of our first opinion, that conflicts with the mandate we issued to the trial court on remand. We agree and reverse the judgment of the trial court.
 I. Proceedings Below
This is the second time we have addressed issues involving these parties on appeal. In order to provide context for the present appeal, we will revisit the facts and holding from the first appeal. See Hansberryv. Westfield Insurance Co., Layne v. Westfield Insurance Co. (June 27, 2000), Ross App. Nos. 99CA2504 and 99CA2505, unreported.
Plaintiffs-Appellants Mark M. Layne and James W. Hansberry (appellants) were injured in separate automobile accidents in 1996 and 1997 during the course and in the scope of their employment with the Ross County Board of Commissioners (the Board). Both accidents were caused by either an uninsured or underinsured motorist.
At the time of each accident, the Board held an automobile policy, issued by Appellee Westfield Insurance Company (Westfield), which listed both appellants as insureds. However, appellants' claims were denied because, according to Westfield, the Board had expressly rejected its offer to carry uninsured and underinsured motorist coverage (UM/UIM coverage).
A. The Initial Action
Shortly thereafter, appellants each filed separate declaratory-judgment actions in the Ross County Court of Common Pleas against Westfield, each seeking a declaration that UM/UIM coverage was available to them. Specifically, they made two arguments: (1) that Westfield failed to provide an adequate written offer of UM/UIM coverage to the Board; and (2) even if a valid offer was made, the Board's rejection of that offer was invalid. Thus, appellants concluded, in the absence of a valid offer that was properly rejected, UM/UIM coverage existed by operation of law.
Eventually, appellants and Westfield filed motions for summary judgment in their respective cases, which the trial court consolidated for purposes of briefing and decision.
1. Westfield's Argument
In support of its summary-judgment motion, Westfield attached a copy of a document it referred to as Form AC753 and two affidavits: the first from James M. Caldwell, a commissioner on the Board; and the second from Gary Brenning, a Westfield agent.
a. The Affidavits
Caldwell, in his affidavit, averred that Brenning had worked with the Board in the renewal of their policy for the policy period of August 3, 1993 through August 3, 1994. Caldwell testified that Brenning had orally offered the Board UM/UIM coverage equal to the bodily injury liability limits on their primary policy, and that this offer was confirmed in writing in Form AC753.
Caldwell further testified that the Board understood the nature of UM/UIM coverage, but chose to reject it because they "did not want to spend tax dollars for this coverage since Workers[`] Compensation laws already protected County employees injured while employed * * *."
In Brenning's affidavit, he corroborated much of what was stated in Caldwell's affidavit. Brenning testified that he discussed UM/UIM coverage with the Board and explained their rights under Ohio law to them. He further stated that, following these discussions, the Board indicated that they would reject UM/UIM coverage and memorialized that intent by returning the signed rejection statement contained in Form AC753 to him.
b. Form AC753
Form AC753 is a one-page document that is divided into three parts: an introductory paragraph, followed by two numbered sections which are separated by a thick horizontal line.
The introductory paragraph states that "[R.C. 3937.18] currently requires that all policies include [UM/UIM coverage] at the limits equal to the Bodily Injury Limits carried on the policy. However, other options of limits or rejection of all coverage are available." The remainder of the document consists of two sections, each beginning with a bolded heading set-off by a roman numeral.
The first section is entitled "Request for optional uninsured/underinsured motorists limits." Beneath this heading are language, checkboxes, and blanks, which would allow an insured to personally tailor UM/UIM coverage. No part of this portion of the document was filled in.
The second section is entitled "Rejection of uninsured/underinsured motorists coverage." This portion of the document was completely filled out. It indicates that, for the policy period of August 3, 1993 to August 3, 1994, the Board rejected UM/UIM coverage. Caldwell's signature, which is indicated to have been signed on behalf of the Board, appears at the bottom of this section.
2. Appellants' Argument and The Trial Court's Decision
Appellants argued in their summary-judgment motions that Form AC753 lacked sufficient detail to qualify as a written offer of UM/UIM coverage. Further, appellants maintained that the Board's discussions with Brenning could not supplement the terms of the written offer.
After considering the motions and affidavits, the lower court agreed with appellants and granted their motion and denied Westfield's motion. The trial court refused to look beyond the four corners of Form AC753, and found that a proper, written offer of UM/UIM coverage was not made. Thus, the lower court held, UM/UIM coverage existed as a matter of law.
The trial court did not address appellants' second argument — whether the Board properly rejected coverage — because, it held, there could be no rejection without there first being a valid offer.
Shortly thereafter, Westfield timely filed what is the first appeal in this matter.
B. The First Appeal
On appeal, we reversed the trial court. We based our decision on our interpretation of Gyori v. Johnston Coca-Cola Bottling Group,Inc. (1996), 76 Ohio St.3d 565, 669 N.E.2d 824.
In Gyori, the Supreme Court of Ohio provided the following as syllabus law: (1) "There can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider"; and (2) "In order for a rejection of uninsured motorist coverage to be expressly and knowingly made, such rejection must be in writing * * *." Id. at paragraphs one and two of the syllabus.
Despite their being no mention of it in the syllabus, we read Gyori to permit extrinsic evidence to be introduced and considered — in this case, the affidavits of Caldwell and Brenning — to supplement a written offer — here, Form AC753. In so finding, we relied on language in the opinion which, in our estimation, was "the court's emphasis on an agent's discussion of UM/UIM coverage with an insured [that] appears to recognize that a written offer of UM/UIM coverage may be supplemented by oral representations by the insurer." Hansberry v.Westfield Insurance Co., Layne v. Westfield Insurance Co., supra.
Thus, we held that Form AC753, coupled with the affidavits averring that detailed discussions of the coverage were had, was enough to satisfy the requirement that UM/UIM coverage be offered, with sufficient specificity, in writing.
We did not address the issue of whether the offer was rejected because the trial court never reached the issue. Accordingly, we remanded the case for the lower court to determine solely whether the offer was properly rejected.
C. Trial Court On Remand
On remand, the trial court found that the Board had made an effective rejection of Westfield's offer of UM/UIM coverage. Specifically, it held the following:
 [T]he [Fourth District] Court of Appeals have [sic] interpreted [Gyori] to permit oral representations and discussions between the insurer and the insured to supplement a written offer of uninsured motorist coverage. This Court will not question whether this is the appropriate interpretation of [Gyori] in light of the recent Supreme Court [of Ohio] case of [Linko v. Indemnity Insurance Company of North America (2000), 90 Ohio St.3d 445, 739 N.E.2d 339]. This Court will follow the direction of the [Fourth District] Court of Appeals to ascertain the parties intent. In this case, the AC753 form coupled with the affidavits of * * * Caldwell and * * * Brenning previously submitted as summary judgment evidence established that the [Board] expressly rejected uninsured motorist coverage. Thus, * * * Westfield * * * is not required to provide [UM/UIM coverage].
Shortly thereafter, appellants timely filed what is the second appeal in this matter, which is currently before us.
 II. The Present Appeal
In their brief to this Court, appellants assigned the following error for our review:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
At the outset, we note that the motions and entries relevant to this appeal, filed in the court below, are virtually identical in regard to both appellants. Likewise, the briefs filed by appellants and Westfield with this Court are virtually identical. As these cases, for our purposes, are factually indistinguishable and involve the same questions of law, we will consider them together. See, e.g., State ex rel. Bryantv. Akron Metropolitan Park Dist. for Summit Country (1929),120 Ohio St. 464, 166 N.E. 407, affirmed 281 U.S. 74, 50 S.Ct. 228; accord Thomas v. Board of Com'rs of Butler County (1923), 28 Ohio App. 8,162 N.E. 430; 5 Ohio Jurisprudence 3d (1999) 130, Consolidation of Causes; Joint Hearings, Section 409 ("Courts of review may * * * without consolidating cases, hear and determine two or more of them together for reasons of convenience * * *.").
A. Standard of Review
Appellate review of a trial court's ruling granting a summary-judgment motion is de novo. See Wille v. Hunkar Laboratories, Inc. (1998),132 Ohio App.3d 92, 724 N.E.2d 492; accord Lee v. Sunnyside Honda
(1998), 128 Ohio App.3d 657, 716 N.E.2d 285. Accordingly, we must evaluate, wholly independent of the trial court's determination, whether Westfield's summary-judgment motion should have been granted.
The test to be applied in summary-judgment cases is well settled. The Supreme Court of Ohio, in Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 696 N.E.2d 201, explained the appropriate analysis as follows:
 Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.
Id. at 370, 696 N.E.2d at 204.
In the present case, the principal dispute is not one of fact, but one involving the proper interpretation of the law in this area. Specifically, whether the trial court applied the law correctly in determining, on remand, that there was a proper rejection of what we previously determined was a valid offer of UM/UIM coverage.
Accordingly, the sole issue on appeal should be whether there was a proper rejection. However, in the present case, we are presented with the rare circumstance where the Supreme Court of Ohio has issued an intervening opinion — here, Linko v. Indemnity Insurance Company ofNorth America, 90 Ohio St.3d at 445, 739 N.E.2d at 339 — which appears to be in conflict with the mandate we gave the lower court on remand.
Thus, we must address, as a threshold matter, whether Linko should have altered our mandate to the lower court on remand. And, specifically, whether the trial court erred in applying the relevant law as we instructed: finding that there was a valid offer, and, correspondingly, a proper rejection based on extrinsic evidence in conjunction with Form AC753.
B. The Law of The Case
Relevant to such issues is the doctrine of the law of the case. This doctrine requires the following:
 [A]fter a reviewing court has reversed and remanded a cause for further action in the trial court, and the unsuccessful party does not prosecute review to the Supreme Court, the pronouncement of the law by the intermediate court becomes the law of the case, and must be followed by the lower court in subsequent proceedings in that case.
Pavlides v. Niles Gun Show (1996), 112 Ohio App.3d 609, 615,679 N.E.2d 728, 731; see Stemen v. Shibley (1982), 11 Ohio App.3d 263,465 N.E.2d 460; accord Nolan v. Nolan (1984), 11 Ohio St.3d 1,462 N.E.2d 410, syllabus.
This doctrine is necessary, "not only for consistency of result and the termination of litigation, but to preserve the structure of the judiciary as set forth in the Ohio Constitution." Pavlidesv. Niles Gun Show, 112 Ohio App.3d at 615, 679 N.E.2d at 731.
Thus, a trial court on remand is ordinarily without authority to resolve the law at variance with that issued by the appellate court in the same case. See Stemen v. Shibley, 11 Ohio App.3d at 263,465 N.E.2d at 460. "Absent extraordinary circumstances, such as an interveningdecision by the Ohio Supreme Court, an inferior court has no discretion to disregard the mandate of a Superior Court in a prior appeal in the same case." (Emphasis added.) Pavlides v. Niles Gun Show,112 Ohio App.3d at 615, 679 N.E.2d at 731; accord Nolan v. Nolan, 11 Ohio St.3d 1,462 N.E.2d 410, syllabus.
Likewise, the law-of-the-case doctrine is applicable to subsequent proceedings in the reviewing court. See Nolan v. Nolan,11 Ohio St.3d at 1, 462 N.E.2d at 410. Thus, the decision of an appellate court in a prior appeal must ordinarily be followed in a subsequent appeal in the same case and court. See id. However, this too is subject to exception: "An Appellate Court may choose to re-examine the law of the case it has itself previously created, if that is the only means to avoid injustice."Pavlides v. Niles Gun Show, 112 Ohio App.3d at 615, 679 N.E.2d at 731; accord Weaver v. Motorists Mutual Insurance Co. (1990), 68 Ohio App.3d 547,589 N.E.2d 101.
C. Linko
Here, appellants maintain that the trial court should have disregarded our assessment in the first appeal — that a valid offer may be discerned from evidence extrinsic to a written document — and instead should have looked to Linko, a Supreme Court of Ohio decision released subsequent to our decision, which holds precisely the opposite, that extrinsic evidence is not admissible for this purpose. We agree.
Linko came to the Supreme Court of Ohio by way of certified questions from the United States District Court for the Western District of New York. The district court certified three questions to the Supreme Court of Ohio. Of relevance to this appeal are two of those questions: (1) "Whether the language of the [UM/UIM coverage] rejection forms accompanying the subject automobile liability policy satisf[ies] the offer requirements of R.C. [3937.18]"; and (2) "With regard to the scope and validity of the [UM/UIM coverage] rejection forms * * * whether the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made * * * or does the parties' intent, established by extrinsic evidence, control * * *." Linko v.Indemnity Insurance Company of North America, 90 Ohio St.3d at 447,739 N.E.2d at 341.
In response to the first inquiry, the Linko Court held: "No. To satisfy the offer requirement of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer." Id. at 47,739 N.E.2d at 341.
In response to the second inquiry, the Linko Court held: "The four corners of the insurance agreement control in determining whether waiver was knowingly and expressly made * * *." Id. at 448, 739 N.E.2d at 341. The court went on to explain its reasoning as keeping with its previous decision in Gyori v. Johnston Coca-Cola Bottling Group, Inc.,76 Ohio St.3d at 565, 669 N.E.2d at 824:
 We conclude that the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made * * *. Again, we cite Gyori, which requires a written offer and a written rejection of UM/UIM coverage. In Gyori this court made it clear that the issue of whether coverage was offered and rejected should be apparent from the contract itself. This court stated that the requirement of written offers "will prevent needless litigation about whether the insurance company offered UM coverage." [Id. at 568, 669 N.E.2d at 827.] By requiring an offer and rejection to be in writing, this court impliedly held in Gyori that if the rejection is not within the contract, it is not valid. In doing so, this court greatly simplified the issue of proof in these types of cases — the offer and rejection are either there or they are not. Extrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made * * *.
Linko v. Indemnity Insurance Company of North America,90 Ohio St.3d at 450, 739 N.E.2d at 343.
Thus, the Linko Court's reading of Gyori is clearly at odds with the position we took in our opinion for the first appeal in this matter. We read Gyori to allow extrinsic evidence to supplement a written offer. Thus, we held that Form AC753, coupled with the affidavits averring that detailed discussions of the coverage were had, was enough to satisfy the requirement that UM/UIM coverage be offered, with sufficient specificity, in writing.
The trial court, on remand, specifically mentioned Linko in rendering its decision: "This Court will not question whether this is the appropriate interpretation of [Gyori] in light of the recent Supreme Court [of Ohio] case of [Linko]. This Court will follow the direction of the [Fourth District] Court of Appeals to ascertain the parties intent."
Thus, the trial court followed our mandate, disregarding Linko, and found that extrinsic evidence could be considered in determining whether a valid offer and rejection of UM/UIM coverage was made.
D. Westfield's Arguments
Westfield argues that Linko is not applicable in this case because: (1) it did not overrule Gyori; (2) it should be limited to its facts; and (3) it is irrelevant because it is merely obiter dictum.
Westfield's argument that Linko does not affect the case sub judice
because it did not overrule Gyori, is clearly erroneous. In Linko, the Supreme Court of Ohio restated its decision in Gyori. In so doing, it explained that, "[i]n Gyori this court made it clear that the issue of whether coverage was offered and rejected should be apparent from the contract itself." Gyori v. Johnston Coca-Cola Bottling Group, Inc.,76 Ohio St.3d at 565, 669 N.E.2d at 824. Thus, the Supreme Court of Ohio was not attempting to overrule Gyori, but rather to clarify it. And it did so, stating in unequivocal terms that extrinsic evidence is not to be considered in evaluating an offer and rejection of UM/UIM coverage.
Further, Westfield's argument that Linko should be limited to its facts is baseless. Nowhere in Linko did the court indicate that its decision was limited to its facts. We see no reason to explore this argument further.
Likewise, Westfield's argument that the holding is irrelevant because it is dictum is also erroneous. Chief among Westfield's various arguments supporting this conclusion are the following: (1) that the aforementioned responses were not in response to the certified questions; and (2) that there was no syllabus in the case.
First, both of the relevant inquiries were, in fact, in direct response to specific questions certified to the Supreme Court of Ohio. We are at a loss as to how Westfield arrived at this conclusion other than it simply misread the opinion.
Second, Westfield is correct that there is no syllabus in Linko. Sup.Ct.Rep.Ops.R. 1(B) provides that, "The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication." Id. Further, Sup.Ct.Rep.Ops.R. 1(C) governs the weight to be given per curiam opinions that are issued without syllabi. However, there is no rule which addresses a Supreme Court of Ohio opinion that has no syllabus and is not a per curiam opinion — which is the case with Linko. See Collins v. Swackhamer (1991), 75 Ohio App.3d 831,600 N.E.2d 1079.
Nevertheless, whether technically binding, or merely persuasive authority, we find Linko renders our previous opinion erroneous. SeeState v. Boggs (1993), 89 Ohio App.3d 206, 213, 624 N.E.2d 204, 210
(explaining that, "[a]ny court which disregards the Supreme Court's discussion of certain issues merely on the basis that it was not carried into the syllabus would be treading on dangerous and unstable ground"); accord Collins v. Swackhamer, 75 Ohio App.3d 831, 600 N.E.2d 1079
(holding that the trial court did not err in following the opinion of the Supreme Court of Ohio even though it was not accompanied by a syllabus). In our first opinion we relied on what is certainly dicta in Gyori to arrive at the conclusion that the Supreme Court of Ohio contemplated extrinsic evidence in the evaluation of UM/UIM coverage. In Linko, the Supreme Court of Ohio squarely addressed this issue and clearly held that extrinsic evidence is not to be considered in such cases.
Thus, we find that the trial court should have followed Gyori, as clarified by the intervening decision of the Supreme Court of Ohio inLinko, and should not have considered extrinsic evidence in evaluating Westfield's written offer and rejection of UM/UIM coverage — just as it did originally. See Pavlides v. Niles Gun Show,112 Ohio App.3d at 615, 679 N.E.2d at 731; accord Nolan v. Nolan, 11 Ohio St.3d 1,462 N.E.2d 410, syllabus.
Accordingly, as the requirements specifically set forth in Linko were not evident in Form AC753, we find that there was not a valid offer, and, correspondingly, there could not have been a valid rejection — as there can be no rejection without there first being in place a proper offer. Thus, we find that the trial court erred, as a matter of law, in granting Westfield's motion for summary judgment.
 III. The Conclusion
We SUSTAIN appellants' assignment of error. The remaining arguments presented by appellants are moot in light of the foregoing. The judgment of the Ross County Court of Common Pleas is REVERSED and the cause REMANDED for proceedings not inconsistent with this opinion.
JUDGMENT REVERSED AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion.
Abele, P.J.: Concurs in Judgment Only.