{¶ 35} Carl W. Meeks, defendant-appellant, appealed from an October 24, 2006 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations ("domestic relations court" or "trial court"), that followed this court's judgment in Meeks v. *Page 13 Meeks, Franklin App. No. 05AP-315, 2006-Ohio-642 ("Meeks I"). InMeeks I, this court affirmed in part and reversed in part a March 1, 2005 divorce decree of the domestic relations court and remanded to that court for further proceedings in accordance with law and consistent with this court's opinion.
 {¶ 36} Dolores H. Meeks is the plaintiff in the action below and the appellee in this appeal.
 {¶ 37} Dolores and Carl were married on September 25, 1984 and have one child, Lacey, who was born May 7, 1987, and is now over 18 years of age. The parties separated in March 2000 when Dolores and Lacey moved into a separate residence. Although Carl subsequently began living with his girlfriend, he retained possession of the marital residence.
 {¶ 38} In June 2001, both parties filed separate divorce actions which were consolidated into case No. 01DR-06-2723. Carl's complaint was converted into an answer and counterclaim to Dolores' complaint.
 {¶ 39} Following a trial during July and August 2004, the domestic relations court rendered a divorce decree on March 1, 2005.
 {¶ 40} Dolores owns a hair salon which the trial court valued at $100,000. Carl was a 50 percent shareholder in a limited liability company ("LLC") known as Team Investors, Ltd. ("Team Investors") that invests in real estate. Team Investors owned property located at 5542 Columbus Pike, Lewis Center, Ohio. This property sold for $2 million before journalization of the final decree of divorce by a "trade for other property." Team Investors was also a 50 percent shareholder in a partnership, Held Team Partnership ("Held Team") which also invests in real estate. Held Team owned property *Page 14 
located at 5530 Columbus Pike, Lewis Center, Ohio. Although the parties anticipated that this property would be sold for $1.8 million prior to journalization of the final decree, no evidence was ever submitted that the property, in fact, sold.
 {¶ 41} Carl is also a 50 percent shareholder in M B Liquidators, Inc. ("M B Liquidators"). Carl was injured in 2001 while working at his furniture store, which is owned by Oak Furniture Showroom, Inc. Carl receives disability payments from the United States Department of Veterans Affairs ("VA"). At trial, Carl testified that he anticipated receiving social security disability payments. Carl also has an interest in a company known as Ads on Wings.
 {¶ 42} Carl appealed the March 1, 2005 judgment of the domestic relations court and Dolores cross-appealed.
 {¶ 43} Carl brought four assignments of error and Dolores brought four cross-assignments of error. This court, in Meeks I sustained Dolores' second and third cross-assignments of error and overruled her first and fourth cross-assignments of error. This court also sustained in part and overruled in part Carl's first, second, and third assignments of error, and overruled Carl's fourth assignment of error.
 {¶ 44} In her second cross-assignment of error, Dolores argued that the trial court erred when it gave Carl a $50,904 credit for his pay-down of the mortgage principle on the marital residence of which he maintained possession following the party's separation, and made the mortgage payments during the pendency of the divorce action. In sustaining Dolores' second cross-assignment of error, this court found that the trial court had erred in failing to deem the $50,904 as a marital asset subject to division. *Page 15 
 {¶ 45} In her third cross-assignment of error, Dolores argued that the trial court erred when it failed to order Carl to pay interest on the judgment amounts that she was awarded. In sustaining Dolores' third cross-assignment of error, this court ordered the trial court to reset the dates on which the payments are due and to order interest pursuant to R.C. 1343.03.
 {¶ 46} In his first assignment of error, in the prior appeal, Carl argued that the trial court erred when it awarded Dolores $414,991.79, and ordered him to pay such amount as one-half of his proceeds from the sale of property owned by Team Investors when he received no proceeds, and the trial court refused to consider the tax consequences of the proposed transactions by Team Investors. As this court explained in its opinion, Carl's argument was two-fold: (1) the trial court erred in ordering him to pay Dolores $414,991.79 for her share of the marital portion of 5542 Columbus Pike and 5530 Columbus Pike when no proceeds were ever taken from the sale of 5542 Columbus Pike and 5530 Columbus Pike never sold; and (2) the trial court erred in failing to take into consideration the tax consequences relating to the investments in 5542 and 5530 Columbus Pike when awarding Dolores her share of the marital portion of the investments.
 {¶ 47} In Meeks I, at paragraphs 28-30, this court addressed Carl's first argument:
 With regard to the first argument, the trial court ordered Carl to pay Dolores $287,491.79 for her share of the marital portion of the 5542 Columbus Pike property, which the court valued at $2 million, and $127,500 for her share of the marital portion of the 5530 Columbus Pike property, which the court valued at $1.8 million. Carl complains that there were no proceeds for the 5542 Columbus Pike property sale because he and his business partner, Allan Blue, utilized a tax-free exchange to use the proceeds to invest in other real estate, thereby resulting in no direct distribution of funds to Team *Page 16 
Investors. In addition, because the 5530 Columbus Pike property did not sell, he has never received any proceeds related to this property. * * *
 * * * It is the duty of this court to determine whether the trial court acted unreasonably, arbitrarily, or unconscionably. Presumably, Carl desires that the investment properties remain intact. However, there is no explanation as to how the investment properties may remain intact while still awarding Dolores half of the marital portion of the investments. Although the parties could have agreed upon a plan to somehow pay Dolores her due marital portion of the investments, they chose not to do so, thereby making it necessary for the trial court to resolve the matter.
 In simplest terms, the investment properties contained a portion of marital property, and the trial court divided that portion equally between the parties. How Carl chooses to extract Dolores' share of the marital portion from the investments or chooses to obtain a sum equal to the value of such share is left to his discretion. Carl's argument that he has no resources to pay the court's judgment is wholly unconvincing. In fact, Carl does have the resources necessary to pay Dolores her share of the marital portion of the property; however, the "resources" lay in the unliquidated value of the real estate, which the trial court did not order to be sold. We find the trial court did not err in granting Dolores one-half of the marital portion of the Columbus Pike properties based upon the fair market value of the properties at the time of the hearing. (Emphasis added.)
 {¶ 48} This court also addressed the second part of Carl's two-fold argument in support of his first assignment of error. This court observed that the record suggests, and Carl admits, that the only assets available to satisfy the trial court's order are the Team Investor real estate holdings. Thus, this court remanded the matter to the trial court "for a determination of the current tax consequences and other costs that would result from selling the marital portion of the properties to be deducted from the proceeds that would be equally divided." Id. at ¶ 33. *Page 17 
 {¶ 49} Accordingly, because his second argument was found to be persuasive, but his first argument was not, Carl's first assignment of error was sustained in part and overruled in part.
 {¶ 50} This court addressed Carl's second and third assignments of error together. Carl argued in his second assignment of error that the trial court erred when it awarded permanent spousal support to Dolores because he is permanently and totally disabled, and his disability income was substantially less than her self-employed income as an owner of a beauty salon. Carl argued in his third assignment of error that the trial court erred when it used $80,066 as his income for purposes of the child support calculation when he has been determined to be permanently and totally disabled.
 {¶ 51} In addressing the child support issues in Carl's third assignment of error first, this court noted that, pursuant to R.C.3119.01(C), income for child support purposes is defined to include the sum of the parent's gross income and "any potential income of the parent." R.C. 3119.01(C)(5)(b). Potential income includes imputed income that the court determines the parent would have earned if fully employed.
 {¶ 52} This court agreed with the trial court's finding that Carl was voluntarily unemployed and disagreed with Carl's argument that the trial court had abused its discretion in reaching that determination. However, this court did agree with Carl's argument that the trial court erred in including $1,700 per month in his income based upon social security disability benefits he had applied for but had not yet been granted as of the time of the hearing. This court held that the social security benefits were "speculative" and not properly included in Carl's income for purposes of calculating child *Page 18 
support. This court held that the matter must be remanded for a recalculation of child support. Id. at ¶ 41.
 {¶ 53} In addressing Carl's second assignment of error, this court noted that the trial court had awarded spousal support to Dolores in the amount of $600 per month, plus the processing charge, effective until further order of the court, and specifically retained jurisdiction to modify the amount or terms of spousal support. Id. at ¶ 42.
 {¶ 54} This court found that in imputing an annual income of $80,066 for spousal support purposes, the trial court erred, as it did in its determination of child support, by including social security disability benefits.
 {¶ 55} However, this court rejected Carl's argument that spousal support was inappropriate because he is permanently and totally disabled and receives only $2,400 per month from the VA, while Dolores is self-employed and earns $49,000 per year. This court rejected Carl's argument that Dolores' income of $49,000 per year was sufficient to meet her living needs as being "conclusory and lacking in any supportive analysis." Id. at ¶ 45. This court remanded the issue of spousal support to the trial court for reconsideration. Id. at ¶ 46. In so doing, this court noted that the trial court's reconsideration will necessarily be impacted by the determination of the tax consequences of selling the business's marital assets and the re-determination of the marital value of the marital residence.
 {¶ 56} As previously noted, on October 24, 2006, the domestic relations court issued its decision and judgment entry following the remand from this court.
 {¶ 57} As to the properties located at 5542 and 5530 Columbus Pike, the trial court ordered Carl to pay to Dolores the sum of $207,840.50 and $86,738.50 for her marital *Page 19 
interests awarded to her in those properties and that those sums be paid within 60 days of the journalization of the October 24, 2006 judgment entry.
 {¶ 58} The trial court also recalculated Dolores' interest in the marital residence to be $70,187.50 and ordered Carl to pay that sum to Dolores within 60 days of the journalization of the judgment entry.
 {¶ 59} The trial court further ordered that Carl pay interest to Dolores at the rate of 8.25 percent on any awards that remain outstanding beyond the time periods set forth for the payment.
 {¶ 60} The trial court further ordered spousal support arrearage and attorney fee amounts, both of which were to be paid within 30 days of the divorce decree, to be paid immediately, plus interest, from April 1, 2005.
 {¶ 61} The trial court recalculated child support and spousal support. Carl was ordered to pay $500.63 per month (plus the processing fee) as child support and $425 per month as spousal support.
 {¶ 62} In November 2006, Carl timely appealed the trial court's October 24, 2006 judgment. He brings the following three assignments of error:
 I. THE TRIAL COURT ERRED BY AWARDING JUDGMENT TO BE PAID IN 60 DAYS AGAINST DEFENDANT FOR A DOLLAR AMOUNT CALCULATED ON THE VALUE OF ONE-HALF OF REAL ESTATE OWNED BY A SEPARATE CORPORATE ENTITY WHERE DEFENDANT HAS INSUFFICIENT LIQUID ASSETS TO PAY THE JUDGMENT AND HE IS NOT A MAJORITY OWNER OF THE CORPORATE ENTITIY.
 II. THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING PERMANENT SPOUSAL SUPPORT TO PLAINTIFF GIVEN THE ASSETS AWARDED TO PLAINTIFF, DEFENDANT'S INCOME AND DEFENDANT'S DISABILITY. *Page 20 
 III. THE TRIAL COURT'S GUIDELINE CALCULATION IS CONTRARY TO THE FINANCIAL STRUCTURE EXISTING PURSUANT TO THE DECISION OF OCTOBER 24, 2006.
 {¶ 63} Carl argues in his first assignment of error that the trial court failed to understand that the property located at 5542 Columbus Pike owned by Team Investors was the subject of a so-called land-swap transaction that did not in fact generate cash proceeds that can be readily paid to Dolores, and that the property located at 5530 Columbus Pike never sold and, thus, remains a holding of Team Investors. Despite the absence of cash proceeds generated by the land swap procured by Team Investors (much less cash), the trial court ordered Carl to pay Dolores the sum of $207,840.50 as Dolores' marital share of the property located at 5542 Columbus Pike and the sum of $86,738.50 as Dolores' marital share of the property located at 5530 Columbus Pike which remains a holding of Team Investors.
 {¶ 64} To support his argument that the trial court failed to take lack of liquidity into account, Carl quotes from page four of the trial court's entry:
 * * * [I]t is ORDERED that the parties split equally the tax-effected proceeds of the business investment properties, with Defendant keeping the remainder of the gross proceeds to meet the costs of sale and taxes. * * *
 {¶ 65} Carl further argues in his first assignment of error that, as a 50 percent shareholder in the LLC, he could not control the LLC or the transactions that the LLC might pursue. Carl concludes that, in reality, the trial court has ordered him to pay an award that is financially impossible for him to do given that his other assets are insufficient to meet the payments ordered by the trial court. *Page 21 
 {¶ 66} Carl contends that the appropriate judgment for the trial court to enter under these circumstances is the award to Dolores of the one-half interest in Carl's ownership interest in the LLC (which order of the trial court was affirmed by the prior appeal). According to Carl, Dolores would then receive her share of the distributions when, if ever, the real estate in question is sold.
 {¶ 67} According to Carl, given that he cannot pay the judgment, the interest ordered by the trial court for failure to pay the judgment imposes on him an additional obligation to pay Dolores an estimated $30,000 in annual interest on the unpaid judgment. Carl argues that he cannot meet the annual interest payment due on the unpaid judgment.
 {¶ 68} Dolores responds to Carl's first assignment of error by contending that it is virtually identical to Carl's first assignment of error in his first appeal to this court ignoring the fact that one-half of Carl's then interest in Team Investors was awarded to her by the trial court judgment affirmed in Meeks I. Carl made the argument: (1) the trial court erred in ordering him to pay Dolores for her share of the marital property of the two properties when no proceeds were ever taken from the sale of the one property and the second property never sold; and (2) the properties are owned by Team Investors of which he has no control because he has a minority interest. As previously noted, this court, in the prior appeal, rejected the first argument, as to amounts ordered paid by the judgment affirmed in Meeks I.
 {¶ 69} In effect, Dolores argues that the doctrine of the law of the case precludes this court in this second appeal from reviewing the trial court's awards to her for the two properties when it was only the tax consequences that the trial court was ordered to *Page 22 
determine on remand, and there is no assignment of error in this second appeal that the trial court erred in determining the tax consequences as previously ordered by this court.
 {¶ 70} The doctrine of the law of the case is well established in Ohio. The doctrine provides that the "`decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" Pipe Fitters Union Local No. 392 v. Kokosing Constr. Co.,Inc. (1998), 81 Ohio St.3d 214, 218, quoting Nolan v. Nolan (1984),11 Ohio St.3d 1, 3.
 {¶ 71} The doctrine is considered to be a rule of practice, rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. Nolan at 3. However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. Id. at 3.
 {¶ 72} Furthermore, an appellate court may choose to reexamine the law of the case it has itself previously created, if that is the only means to avoid injustice. However, such reexaminations must not be undertaken lightly by an appellate court nor encouraged as a common course of conduct for unsuccessful litigants. Weaver v. Motorists Mut. Ins.Co. (1990), 68 Ohio App.3d 547, 549; Pavlides v. Niles Gun Show,Inc. (1996), 112 Ohio App.3d 609, 615; Carr Supply, Inc. v. RockfordHomes, Inc., Franklin App. No. 02AP-960, 2003-Ohio-4676; Rose v.Rose (Sept. 27, 1999), Morrow App. No. CA-870 (overruling a portion of its prior appellate decision).
 {¶ 73} In Meeks I, we recognized that Carl and his business partner, Allan Blue, utilized a tax free exchange to use the proceeds to invest in other real estate thereby resulting in no direct distribution of funds to Team Investors when the 5542 Columbus *Page 23 
Pike property sold. We also recognized that the 5530 Columbus Pike property did not sell and, thus, Carl never received any proceeds related to that property. At ¶ 30, in Meeks I, we stated that "[h]ow Carl chooses to extract Dolores' share of the marital portion from the investments or chooses to obtain a sum equal to the value of such share is left to his discretion." We further recognized that the trial court did not order the properties held by Team Investors to be sold. Moreover, in the final sentence of ¶ 30, this court entered its finding that the trial court did not err in granting Dolores' one-half of the marital portion of the Columbus Pike properties based upon the fair market value of the properties at the time of the hearing. The trial court's conclusion that Carl has the discretion to liquidate the value of the real estate held by Team Investors which is an LLC (in which Carl had a 50 percent share prior to Meeks I) is contrary to the evidence since 50 percent of Carl's interest in Team Investors had been awarded by the trial court to Dolores as part of her share of the marital estate (and affirmed in Meeks I) and Carl had no control of the business of Team Investors, full control being in the managing partner Alan Blue.
 {¶ 74} Carl cannot extract Dolores' share of the marital portion from Team Investors because he was previously a 50 percent shareholder in an LLC managed by Allan Blue. He cannot liquidate or sell the real estate holdings of Team Investors without Blue's consent. Moreover, Blue was not joined as a defendant in the divorce action and, thus, Blue could not be ordered by the trial court to liquidate or sell the real estate holdings of Team Investors.
 {¶ 75} Furthermore, there is no evidence in the record supporting the suggestion or conclusion that Carl can realistically obtain a sum equal to the value of Dolores' share *Page 24 
in Team Investors. There was no testimony or evidence to support the suggestion that a bank or other lending institution would be willing to accept Carl's 25 percent share in the Team Investors' LLC as collateral for a loan to be used to pay Dolores her 25 percent "share" of Team Investors even assuming it had received the proceeds of the sale of the two properties. In the absence of evidence as to Carl's ability to borrow money using his share of the LLC as collateral, it is at best speculative to conclude that Carl has the discretion to obtain a sum of money to pay Dolores her share of the marital property consisting of the Team Investors investment.
 {¶ 76} Based upon the analysis above, it was error for the trial court to order Carl to pay Dolores her share of the marital value of the properties owned by Team Investors within 60 days of the journalization of the judgment entry. It was further an abuse of discretion for the trial court to award interest to Dolores for inability on Carl's part to pay the awards as they were ordered due by the trial court.
 {¶ 77} In the prior decree considered by this court in Meeks I the trial court awarded to Dolores 50 percent of Carl's interest in the corporation Team Investors. Carl's interest consisted of ownership of 50 percent of the corporate stock of Team Investors. He had no ownership in the investments owned by Team Investors and no right to control them because his partner also held a 50 percent interest in the corporations but was designated as the managing principle and had the right to control the business of the corporation. Team Investors owned some investment properties, two of which have been sold, but the sales have not been completed. There is some suggestion that one of the properties owned by Team Investors has been sold, but the proceeds had not yet been received by Team Investors as to the second property. Although there was a contract of *Page 25 
sale, that sale had not yet been consummated. Carl has received no payment from Team Investors or anyone else representing the proceeds of the sale of the property even the one that had apparently been consummated.
 {¶ 78} Carl now, however, owns only 25 percent of the shares of Team Investors, because the trial court by the prior decree awarded half of Carl's 50 percent interest to Dolores making her an owner of 25 percent of the stock shares of Team Investors. As such, she has the rights of a minority share holder, the same as Carl does and has the same right to enforce her 25 percent interest in Team Investors as Carl does with respect to his 25 percent interest. The trial court's prior decree awarding the 25 percent interest in Team Investors as part of the marital estate was affirmed by this court in Meeks I. This court stated specifically as a finding "[w]e find the trial court did not err in granting Dolores one-half of the marital portion of the Columbus Pike properties based upon the fair market value of the properties at the time of the hearing." Id. at ¶ 30. In other words, the award was essentially a one-half interest in Team Investors because it owned the Columbus Pike properties.
 {¶ 79} The evidence was clear that Carl owned directly no interest in the properties, Team Investors, which did own the properties. The trial court did appear to treat the two Columbus Pike properties owned by Team Investors as if Carl personally owned them, although it did initially refer to "division of both pieces of Team Investors Real Estate interest." Alan Blue (who owned the remaining share of Team Investors) was the managing partner of the LLC and operated the business of the LLC. There is no indication that Carl had anything to do with the business of Team Investors, the owner of the properties in question. There is no indication that either Carl or Dolores would be *Page 26 
entitled to receive any sum of money at the closing of the transaction involving the sales of the properties by Team Investors to a purchaser. Rather, since Team Investors is the owner, presumably the proceeds would be paid to Team Investors. A distribution might then be made to both Carl and Dolores of their respective interests as a distribution from the corporation. There also is no clear indication that Team Investors has received the money, nor is Team Investors nor its managing partner, Alan Blue, an immediate party to these proceedings.
 {¶ 80} Under those circumstances, it was error and an abuse of discretion on the part of the trial court to order Carl to pay Dolores her share of the proceeds based upon her 25 percent ownership of the shares of Team Investors which had been awarded to her by the prior decree. There is no indication from the record that Carl has received any sum of money as a result of the closing of the one transaction nor any money as a result of the contract to sell the other property. Had Carl received the distribution representing his and Dolores' share of the proceeds received by Team Investors as a result of the sale ordering Carl to make payment to Dolores and assessing interest and a time table might have been appropriate. However, that is not the case presented by the record. Neither Carl nor Dolores apparently have received any sum of money from Team Investors or otherwise as a result of the consummated sale of the one property and the executory contract to sell the other.
 {¶ 81} The appropriate judgment for the trial court to enter under these circumstances is implementation of the award to Dolores of a one-half interest in Carl's ownership interest in the LLC. Accordingly, I would sustain Carl's first assignment of error and remand this matter to the trial court to implement the judgment awarding Dolores a *Page 27 
one-half interest in Carl's ownership interest in the LLC known as Team Investors, Ltd., to the extent this has not been accomplished.
 {¶ 82} Carl's second assignment of error states that the trial court abused its discretion by awarding permanent spousal support to Dolores given the assets awarded to Dolores, Carl's income and Carl's disability. Carl argues that Dolores' income is greater than his, absent the imputing of income to defendant over and above his disability benefits.
 {¶ 83} In Meeks I, this court found that the trial court did not err in imputing potential income of $30,866 to Carl under R.C.3119.01(C)(5)(b). Id. at ¶ 40. This court further stated that it agreed with the trial court's determination that Carl was voluntarily unemployed. Id. at ¶ 36.
 {¶ 84} The trial court erred by imputing income to Carl in the amount of $30,866 because there is no evidence to support that figure as representing the value of whatever employment Carl may be capable of doing. In the trial court's entry of March 1, 2005, at pages 23-28, the trial court discusses Carl's earnings history during the years 2000 through 2003 and, thereafter, as well as Carl's personal checking activity. The trial court indicates that, while Carl testified that some of the checking deposits may have been lump sum payments from the VA, there is a vast sum of money unaccounted for — suspiciously close to the filing of the instant divorce. No new evidence was considered on remand despite the changes since the prior decree.
 {¶ 85} While the evidence discussed by the trial court may indeed raise suspicions that Carl is capable of earning more than his VA benefits and that he is, thus, voluntarily unemployed to some extent, there is no real explanation from the trial court's order *Page 28 
appealed as to how it calculated Carl's imputed income to be $30,866. Moreover, the evidence discussed by the trial court does not reveal how it could arrive at the $30,866 figure. Thus, the trial court erred in its determination of spousal support.
 {¶ 86} Accordingly, Carl's second assignment of error should be sustained and remanded upon the matter of spousal support to the trial court for a determination consistent with this dissent.
 {¶ 87} Carl's third assignment of error states that the trial court's guideline calculation is contrary to the financial structure existing pursuant to the decision of October 24, 2006.
 {¶ 88} The trial court's error in imputing $30,866 to Carl has also caused the trial court to err in its determination of child support. Accordingly, Carl's third assignment of error should be sustained and remanded upon the matter of child support for a determination consistent with this dissent.
 {¶ 89} Accordingly, Carl's assignments of error should be sustained and this action should be remanded to the Franklin County Court of Common Pleas, Domestic Relations Division, for further proceedings and a determination consistent with this dissenting opinion. *Page 1