[Cite as *Herman v. Herman*, 2021-Ohio-3876.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

MELISSA HERMAN,

    PLAINTIFF-APPELLEE/
    CROSS-APPELLANT,

    v.

PATRICK HERMAN,

    DEFENDANT-APPELLANT/
    CROSS-APPELLEE.

CASE NO. 12-21-01

O P I N I O N

Appeal from Putnam County Common Pleas Court
Trial Court No. 2019 DV 00165

Judgment Affirmed in Part, Reversed in Part

Date of Decision: November 1, 2021

APPEARANCES:

    *William E. Clark* for Appellant

    *Kelly J. Rauch* for Appellee

Case No. 12-21-01

**WILLAMOWSKI, P.J.**

{¶1} Appellant/cross-appellee Patrick Herman ("Patrick") brings this appeal from the judgment of the Court of Common Pleas of Putnam County, granting a divorce to Appellee/cross-appellant Melissa Herman ("Melissa") and ordering a distribution of property and spousal support. Both Patrick and Melissa have filed appeals from this judgment. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} Patrick and Melissa were married on October 29, 1994. Doc. 1. On October 15, 2019, Melissa filed a complaint for divorce alleging that the parties were incompatible, gross neglect of duty by Patrick, and extreme cruelty towards Melissa. Doc. 1. Patrick filed an answer and counterclaim on November 14, 2019. Doc. 8. Although Patrick denied the gross neglect of duty and extreme cruelty, he admitted that the parties were incompatible. Doc. 8. The incompatibility was the basis for Patrick requesting that a divorce be granted as well. Doc. 8. Patrick also requested temporary spousal support. Doc. 9.

{¶3} Although the parties agreed that they should be divorced, they disagreed as to how the property should be distributed. Multiple hearings were held on the matter. On June 9 and 30, 2020, hearings were held as to whether real estate gifted from Melissa's parents, known as the lake property, was separate or marital property. Doc. 36. Following the hearings, the trial court issued a judgment finding

-2-

that the intent of the gift was to give it to Melissa alone, so it was separate property.

Specifically, the trial court found as follows.

> **It is clear to the Court that the intent of Wife's parents was to gift the real estate to their children. The fact that the deeds of the other siblings were only in the name of the sibling themselves and not the spouse goes directly to the intent of the parents as it is to be a gift to the children and not to the children and their spouses. Even though wife directly decided to include her husband's name on the deed it does not change the donative intent of the parents. Also, wife's parents continued to use the property as their own for a period of sometime [sic] after the transfer.**

Doc. 37. Based upon the intent of the parents, the trial court determined that the lake property was separate, not marital property. Doc. 37. The personal property was subject to further review. Doc. 37.

{¶4} Prior to the final hearings on the divorce, Melissa filed an asset and debt summary which provided estimated values of all marital assets and debts. Doc. 44. Patrick filed his memorandum setting the values of certain assets. Doc. 45. In his memorandum, Patrick requested that he continue to receive spousal support. Doc. 45. A final hearing on the divorce complaint and counterclaim was held on October 1 and December 2, 2020. Doc. 57. On December 22, 2020, the trial court granted the divorce to the parties, ordered a division of property, and ordered Melissa to pay spousal support in the amount of $399.44 per month for a period of 75 months beginning on February 1, 2021. Doc. 58. On January 19, 2021, Patrick filed a notice of appeal from the trial court's judgment. Doc. 65. Melissa filed a notice of cross-

appeal on January 27, 2021. The following assignments of error were raised on appeal.

**Patrick's First Assignment of Error**

**The trial court's classification of the "lake property" as [Melissa's] separate property was against the manifest weight of the evidence when it determined that [Melissa's] parents' intent was to give the property as a gift only to her.**

**Patrick's Second Assignment of Error**

**If this Court should find that [Melissa's] parents gave the "lake property as a gift only to her, this Court should also determine that Appellee gave a one-half interest in the property as a gift to [Patrick] and that said one-half interest is his separate property.**

**Patrick's Third Assignment of Error**

**The division of property ordered by the trial court is against the manifest weight of the evidence and contrary to law because certain factual findings of the court are unsupported by any evidence on the record and contrary to the factual stipulations of the parties.**

**Melissa's First Assignment of Error**

**The trial court's division of property order is against the manifest weight of the evidence.**

**Melissa's Second Assignment of Error**

**The trial court abused its discretion when it ordered [Melissa] to pay spousal support to [Patrick].**

*Patrick's First Assignment of Error*

{¶5} Patrick claims in his first assignment of error that the trial court's determination that the lake property was Melissa's separate property is against the manifest weight of the evidence. A trial court's factual determination as to whether an item of property is separate or marital property is reviewed under a manifest weight of the evidence standard. *Buck v. Buck*, 6th Dist. Fulton No. F-17-012, 2018-Ohio-3704, ¶ 9. The decision of the trial court will not be reversed if it is supported by some competent and credible evidence. *Id.* "This highly deferential standard of review permits the affirmation of the trial court's judgment if there is even 'some' evidence to support the court's finding." *Ward v. Ward*, 3d Dist. Allen No. 1-03-63, 2004-Ohio-1390, ¶ 5. Generally, property acquired during a marriage is considered to be marital property. R.C. 3105.171(A)(3)(a).

> **Overcoming the presumption pursuant to R.C. 3105.171(A)(3)(a) that property acquired during the marriage is marital property requires "clear and convincing evidence," meaning "that degree of proof which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." * * * "Clear and convincing evidence" is more than a mere preponderance of the evidence but less than the certainty required for "beyond a reasonable doubt" in criminal cases. * * * We will not reweigh the evidence introduced to the trial court; rather, we will uphold the findings of the trial court if the record contains some competent, credible evidence to support the trial court's conclusions.**

*Buck, supra* at ¶ 10. "Separate property", as it is used in this case, is defined as any real or personal property that the court finds to be a gift given to only one spouse. R.C. 3105.171(A)(6)(a)(vii).

{¶6} Here, the lake property was a gift from Diane Hoellrich ("Diane") and Daniel Hoellrich ("Daniel"), the parents of Melissa. No one disputes that the real estate was titled in both Patrick and Melissa's name. However, the title of property is not dispositive of whether the property is marital, but rather is just evidence of the intent. *Sharp v. Sharp*, 9th Dist. Wayne No. 19AP0046, 2020-Ohio-3537, ¶ 8. In this case, the property was transferred via an *inter vivos* gift from Diane and Daniel. Thus, the first question is what was the intent of Diane and Daniel at the time of the gift.

{¶7} Diane and Daniel both testified that the intent was to give the property to Melissa as an early inheritance. June 9 Tr. 6, 30. Diane testified that the only reason Patrick's name was on the deed was because Melissa asked for his name to be added. June 9 Tr. 10-11. Two other lots were given to their other children and were only titled in the name of those children, not the spouses. June 9 Tr. 9. Diane indicated that the kids told them how to title the property, so they did what Melissa asked. June 9 Tr. 10. Daniel testified that the lake property had been in his family for generations. June 9 Tr. 29. He wanted to give the property to Melissa with the belief that she would later pass it down to her children. June 9 Tr. 30. Daniel wanted Melissa to have it. June 9 Tr. 31. Given the testimony of Diane and Daniel, there

is competent, credible evidence to support the trial court's determination by clear and convincing evidence that the lake property was intended to be the separate property of Melissa and not a gift to both parties. The first assignment of error is overruled.

*Patrick's Second Assignment of Error*

{¶8} In his second assignment of error, Patrick claims that even if the trial court did not abuse its discretion in finding the lake property to be separate property, this Court should find that Melissa intended to give him a gift of one-half interest in the property. This then leads this Court to the second issue, which is whether Melissa intended to gift a share in the lake property to Patrick. "If separate property is commingled with marital property, the separate property does not become marital property unless 'the separate property is not traceable.'" *Kesler v. Kesler*, 3d Dist. Paulding No. 11-18-04, 2018-Ohio-5059, ¶ 8 quoting R.C 3105.171(A)(6)(b). "[T]he holding of title to property * * * by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H). *See also Brandon v. Brandon*, 3d Dist. Mercer No. 10-08-13, 2009-Ohio-3818, ¶ 24. Thus, Patrick may take an interest in the lake property if Melissa had the intent to gift a share to him.

{¶9} The party claiming that an inter vivos gift was made has the burden of showing by clear and convincing evidence that such a gift was made. *Brandon, supra* at ¶ 26. "Moreover, the existence of a deed in the names of both parties does

not shift the burden away from the donee spouse to prove that an inter vivos gift occurred." *Id.* To prove that an inter vivos gift from Melissa was made, Patrick would need to show that 1) Melissa intended to transfer the title and right of possession of the property to Patrick immediately and 2) a delivery by Melissa to Patrick of the gift with relinquishment of ownership, dominion and control over it. *Id.* at ¶ 25. An inter vivos gift is basically a transfer of property from a competent donor to another that is immediate, voluntary, gratuitous and irrevocable. *Id.*

{¶10} Melissa testified that she wanted the property in her name only. June 30 Tr. 57. According to Melissa, this upset Patrick so to placate him and keep the peace, she told Diane and Daniel to also put Patrick's name on the deed. June 30 Tr. 57-58. Melissa testified that she wanted the lake property as hers alone so that she could pass it on to her children as had been done for generations in her family. June 30 Tr. 81. Thus Melissa's testimony was that she did not mean to gift Patrick an interest in the lake property. Patrick testified that Melissa always intended for the lake property to belong to both of them, thus gifting him half of her interest. Given this testimony, the trial court would have to weigh the evidence to determine which was more credible and reach a conclusion. The trial court in this case did not make such a determination on the record. Without a factual determination as to this issue, the question has not been resolved by the trial court. Therefore, we sustain the assignment of error as to the claim that the trial court did not address this issue and remand the matter to the trial court for consideration of Melissa's intent, but

make no conclusions regarding the issue. To this extent, Patrick's second assignment of error is sustained.

*Patrick's Third Assignment of Error and*
*Melissa's First Assignment of Error*

{¶11} Patrick claims in his third assignment of error and Melissa claims in her first assignment of error that the trial court erred in the determination of value of certain marital assets. "The valuation of marital assets is typically a factual issue that is left to the discretion of the trial court." *Roberts v. Roberts* 10th Dist. Franklin NO. 08AP-27, 2008-Ohio-6121, ¶ 18. An appellate court will not reverse this determination if there is relevant, competent, and credible evidence upon which that determination is based. *Stocker v. Stocker*, 3d Dist. Hancock No. 5-17-11, 2017-Ohio-8434, ¶ 13.

{¶12} Patrick argues in the third assignment of error that the trial court erred in 1) assigning value to the 2006 Suburban, 2) assigning value to the amount of the loan on the Ford Focus, and 3) finding that the parties had stipulated that Patrick would receive $18,961 in personal property and Melissa would receive $19,998 in personal property when they had stipulated the opposite. As to the Suburban, Patrick correctly asserts that no testimony was provided as to the value of the vehicle. Patrick did testify to the condition and the mileage. Specifically Patrick testified "I have have a 2006 Suburban that barely has a bumper left, paint's all coming off of it, it has about 200,000 miles on it." Dec. 2 Tr. 63. Melissa claimed

in her affidavit of property that the Suburban was worth $4,500, not the $6,000 that the trial court stated was her claim. Doc. 3. Patrick claimed in his arguments that it was worth only $2,000. Doc. 55. Melissa agrees that no party presented any evidence that the Suburban was worth $6,000 and that the trial court erred as to making that finding. The trial court's finding of fact that the Suburban was worth $6,000 is not supported by any evidence and is thus an abuse of discretion.

{¶13} Patrick also claims that the trial court erred by stating that the debt owed on the Ford Focus was $1,403.37 and the value was also $1,403.37. In that same paragraph, the trial court also states that the "debt was determined to be $821.51 per testimony as to any debt valuation of the vehicle." Doc. 57 at 4. However, in the decree of divorce, the trial awarded the Ford Focus, valued at $3,912 to Melissa along with the "debt of $1,403.37". Doc. 58. The value of $3,912 was used in the trial court's exhibits 1 and 3. Doc. 57. Melissa agrees on appeal that the amount owed on the Ford Focus was $821.51, not $1,403.37. A review of the record shows that Melissa presented evidence that the value of the Ford Focus was $3,912. Plaintiff's Ex. C. Thus, the trial court's determination of the value of the vehicle is supported by competent, credible evidence. Although Melissa provided evidence that the amount of the debt owed on the Focus was $1,403.37 when she completed the spreadsheet for the September hearing, she noted at that time it did not include all of the payments. Plaintiff's Exhibit LLL indicated that the amount owed on the Ford Focus was only $821.51 and Melissa agrees on appeal

that amount is correct. Thus, on remand, the trial court is required to correct the amount of the debt.

{¶14} Finally Patrick argues that the trial court reversed the amounts of personal property that the parties would receive. Melissa concurs with this argument. A review of the record shows that the parties stipulated that Patrick would receive $19,998 in personal marital property and Melissa would receive $18,961 in personal marital property. Oct. 1 Tr. 71. The trial court in its allocation of assets reversed these numbers. Court Ex. 3. This affects the equitable division of assets. Thus, the trial court upon remand needs to correct this error. Patrick's third assignment of error is sustained.

{¶15} Melissa claims in her first assignment of error that the trial court erred in its property division by 1) mistakenly listing the FME/Community Choice debt as $117 instead of $1,170 and 2) erring in how it offset the amount owed by Patrick to Melissa from the division of Melissa's 401K plan. As to the FME/Community Choice debt, a review of the record shows that as of September 2020, Melissa had paid $990. Plaintiff's Ex. LLL. The trial court indicated that it was using the numbers set forth in Plaintiff's Ex. LLL to determine the values, but used the number $117 in its calculations. This appears to be a typographical error that affected the division of property and needs to be corrected by the trial court.

{¶16} Melissa also claims that the trial court did not use the method stipulated for calculating how the offset to her 401K plan was completed. A review

of the record shows that the parties stipulated that they would offset the amount owed by Patrick for equity in the marital home for an equal amount in Melissa's 401K plan and all of the retirement accounts would be subject to a QDRO. However, the record does not indicate that the parties stipulated that they would divide the assets first and then offset the amount. A trial court has broad discretion in how marital assets are divided and its determination will not be overturned on appeal absent an abuse of that discretion. *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434. Although Melissa claims that the trial court's method resulted in her getting less money, which it does, it is the equitable division. To use the method Melissa suggests would result in an inequitable division of the property and a windfall to her.

Example of Calculation of Offset of Home Equity

Value of Home = $171,500 - $68,131 (mortgage) = $103.369 (equity)
Patrick's Equity = $51,684.50, Melissa's Equity = $51,684.50

Melissa's 401K with example value of $200,000[1] (no real value provided).

Trial Court's Method of Evaluation:

Melissa gets first $51,684.50 from 401K, leaving $148,315.50 to be divided
Melissa = $74,157.75 + $51,684.50 (home equity offset) = $125,842.25
Patrick = $74,147.75 + $51,684.50 (home equity) = $125,842.25

---

[1] This number is used solely for the purposes of demonstration and is not in any way to be deemed as a determination by this court as to the actual value of Melissa's 401K plan.

Melissa's Method of Evaluation:

Melissa = $100,000 + $51,684.50 (home equity offset) = $151,684.50
Patrick = $100,000 - $51,684.50 (offset) + $51,684.50 (home equity)
= $100,000

Thus, the trial court did not abuse its discretion in using the method it did. Melissa's first assignment of error is overruled as to the method used by the trial court in offsetting the property division against the 401K plan, but is sustained as to the amount of debt paid on the FME/Community Choice debt.

*Melissa's Second Assignment of Error*

{¶17} Melissa argues in her second assignment of error that the trial court erred in determining the amount of spousal support. However, before making an award of spousal support, the trial court must first make an equitable division of marital property. R.C. 3105.171(C)(3). Since this Court has determined that there were errors in the division of marital property, the issue of spousal support must be revisited by the trial court. *See Webb v. Webb*, 3d Dist. Marion No. 9-96-6, 1996 WL 355059 (holding that the equitable division of property must occur prior to the award of spousal support pursuant to R.C. 3105.171(C)(3)). The assignment of error regarding the spousal support is sustained to the extent the trial court must correct the error's regarding the division of marital property and will thereafter need to recalculate the spousal support.

{¶18} Having found errors prejudicial to the appellant and the cross-appellant, the judgment of the Court of Common Pleas of Putnam County, Domestic Division is affirmed in part and reversed in part.

***Judgment Affirmed in Part***
***Reversed in Part***

**MILLER and SHAW, J.J., concur.**

**/hls**