[Cite as *Herman v. Herman*, 2022-Ohio-4148.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

MELISSA HERMAN,

      PLAINTIFF-APPELLEE/             CASE NO.  12-22-01
      CROSS-APPELLANT,

      v.

PATRICK HERMAN,

                                  **O P I N I O N**

      DEFENDANT-APPELLANT/
      CROSS-APPELLEE.

Appeal from Putnam County Common Pleas Court
Domestic Relations Division
Trial Court No.  2019 DIV 00165

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   November 21, 2022

APPEARANCES:

     *William E. Clark* for Appellant/Cross-Appellee

     *Kelly J. Rauch* for Appellee/Cross-Appellant

Case No. 12-22-01

**PER CURIAM.**

{¶1} Appellant/cross-appellee, Patrick Herman, appeals the December 20, 2021 judgment of the Putnam County Court of Common Pleas, Domestic Relations Division. Appellee/cross-appellant, Melissa Herman, appeals the same judgment. For the reasons that follow, we affirm in part and reverse in part.

## I. Facts & Procedural History

{¶2} This is the second time this case has come before this court. *See Herman v. Herman*, 3d Dist. Putnam No. 12-21-01, 2021-Ohio-3876 ("*Herman I*"). The basic factual and procedural background of this case was covered in detail in *Herman I*:

> Patrick and Melissa were married on October 29, 1994. Doc. 1. On October 15, 2019, Melissa filed a complaint for divorce alleging that the parties were incompatible, gross neglect of duty by Patrick, and extreme cruelty towards Melissa. Doc. 1. Patrick filed an answer and counterclaim on November 14, 2019. Doc. 8. Although Patrick denied the gross neglect of duty and extreme cruelty, he admitted that the parties were incompatible. Doc. 8. The incompatibility was the basis for Patrick requesting that a divorce be granted as well. Doc. 8. Patrick also requested temporary spousal support. Doc. 9.
>
> Although the parties agreed that they should be divorced, they disagreed as to how the property should be distributed. Multiple hearings were held on the matter. On June 9 and 30, 2020, hearings were held as to whether real estate gifted from Melissa's parents, known as the lake property, was separate or marital property. Doc. 36. Following the hearings, the trial court issued a judgment finding that the intent of the gift was to give it to Melissa alone, so it was separate property. Specifically, the trial court found as follows[:]

> **It is clear to the Court that the intent of Wife's parents was to gift the real estate to their children. The fact that the deeds of the other siblings were only in the name of the sibling themselves and not the spouse goes directly to the intent of the parents as it is to be a gift to the children and not to the children and their spouses. Even though wife directly decided to include her husband's name on the deed it does not change the donative intent of the parents. Also, wife's parents continued to use the property as their own for a period of sometime [sic] after the transfer.**

> Doc. 37. Based upon the intent of the parents, the trial court determined that the lake property was separate, not marital property. Doc. 37. The personal property was subject to further review. Doc. 37.

> Prior to the final hearings on the divorce, Melissa filed an asset and debt summary which provided estimated values of all marital assets and debts. Doc. 44. Patrick filed his memorandum setting the values of certain assets. Doc. 45. In his memorandum, Patrick requested that he continue to receive spousal support. Doc. 45. A final hearing on the divorce complaint and counterclaim was held on October 1 and December 2, 2020. Doc. 57. On December 22, 2020, the trial court granted the divorce to the parties, ordered a division of property, and ordered Melissa to pay spousal support in the amount of $399.44 per month for a period of 75 months beginning on February 1, 2021. Doc. 58. On January 19, 2021, Patrick filed a notice of appeal from the trial court's judgment. Doc. 65. Melissa filed a notice of cross-appeal on January 27, 2021.

(Boldface sic.) *Id.* at ¶ 2-4.

{¶3} In *Herman I,* Patrick challenged the trial court's determination that the lake property was Melissa's separate property. Patrick maintained that because Melissa's parents included both his name and Melissa's name on the deed transferring ownership of the lake property, the lake property was marital property. Patrick argued in the alternative that even if Melissa's parents intended for the lake

property to be a gift just to Melissa, and not a gift to both of them, Melissa, by directing her parents to put his name on the deed to the lake property, intended to give him a gift of an interest in the lake property. In addition to his arguments concerning the lake property, Patrick also claimed that the trial court erred in determining the value of certain marital assets and debts, specifically a 2006 Suburban and an outstanding loan for a Ford Focus, and that the trial court incorrectly implemented a stipulation regarding the distribution of personal property between himself and Melissa.

{¶4} As for Melissa, in her cross-appeal in *Herman I*, she argued that the trial court erred by listing the amount of an FME/Community Choice debt as $117 rather than the true amount of $1,170. Melissa also claimed that the trial court abused its discretion by ordering her to pay Patrick spousal support. Finally, Melissa argued that the trial court abused its discretion in the way that it offset Patrick's share of marital property against Patrick's interest in an account Melissa owned. Specifically, after the trial court valued and divided Melissa and Patrick's marital assets and debts (excluding their retirement accounts and pension plans), it appeared that Patrick would receive significantly more marital property than Melissa. Rather than requiring Patrick to make a separate payment to Melissa in an amount sufficient to make up the difference, the trial court offset the marital portion of Melissa's 401k account, which otherwise would be divided equally between Melissa and Patrick,

by that amount. The trial court thus ordered that Melissa "shall receive the first $62,088.96 of the marital portion" of her 401k account and that "[t]he remaining marital portion shall be divided equally between the parties." (Doc. Nos. 57, 58). Melissa took issue with this method, arguing that the trial court should have first divided her 401k into two equal shares and then deducted from Patrick's share the amount owing to her.

**{¶5}** With respect to Patrick's arguments, we concluded that there was "competent, credible evidence to support the trial court's determination by clear and convincing evidence that the lake property was intended [by Melissa's parents] to be the separate property of Melissa and not a gift to both parties." *Herman I*, 2021-Ohio-3876, at ¶ 7. However, regarding whether Melissa intended to give Patrick a gift of an interest in the lake property, we determined that "the question ha[d] not been resolved by the trial court," and we thus remanded the matter to the trial court "for consideration of Melissa's intent." *Id.* at ¶ 10. We also concluded that the trial court's valuation of the 2006 Suburban was not supported by the evidence, that the trial court had not correctly determined the amount of the debt for the Ford Focus, and that the trial court had not properly implemented Patrick and Melissa's stipulation regarding the distribution of personal property. These matters too were remanded to the trial court for reevaluation.

{¶6} Concerning Melissa's arguments, we determined that the trial court had erroneously stated the amount of the FME/Community Choice debt and remanded this issue to the trial court for correction. However, we concluded that the trial court, in offsetting Patrick's share of marital property against the marital portion of Melissa's 401k account, "did not abuse its discretion in using the method it did." *Id.* at ¶ 16. Finally, we held that because "there were errors in the division of marital property, the issue of spousal support must be revisited by the trial court." *Id.* at ¶ 17. We sustained Melissa's spousal-support argument "to the extent the trial court must correct the errors regarding the division of marital property and will thereafter need to recalculate the spousal support." *Id.* Accordingly, we also directed the trial court to reassess the matter of spousal support on remand.

{¶7} On remand, the trial court did not hold any additional hearings. On December 20, 2021, the trial court issued a superseding judgment entry addressing the remanded issues. As relevant to the instant appeal, the trial court found that Melissa did not intend to transfer any interest in the lake property to Patrick. Therefore, the trial court concluded, the lake property was Melissa's separate property. Furthermore, the trial court assigned a valuation of $4,500 to the 2006 Suburban. Moreover, in offsetting Melissa's 401k account and Patrick's share of marital property, the trial court used the method that this court approved in *Herman I.* However, due to corrections in the valuation and division of certain marital assets,

the offset amount was increased to $62,611.53. Finally, the trial court again ordered Melissa to pay spousal support to Patrick in the amount of $399.44 per month for a period of 75 months.

## II. Assignments of Error

{¶8} On January 7, 2022, Patrick filed a notice of appeal. He raises the following assignments of error for our review:

**1. The trial court improperly applied or failed to apply the family gift presumption to transfer of property from one spouse to another.**

**2. The trial court erred in determining that the lake house was wife's separate property.**

**3. The trial court abused its discretion by assigning a valuation of $4,500 to the 2006 Suburban.**

{¶9} On January 18, 2022, Melissa filed a notice of cross-appeal. She raises the following assignments of error for our review:

**1. The trial court abused its discretion when it failed to divide the property of the parties equally.**

**2. The trial court abused its discretion when it ordered appellee/cross-appellant to pay spousal support to appellant/cross-appellee.**

**3. The trial court abused its discretion when it failed to include the parties' stipulations regarding the disposition of the photographs and videos in its final entry.**

### III. Discussion

**A. Patrick's First & Second Assignments of Error: Did the trial court err by determining that the lake property is Melissa's separate property?**

{¶10} In his first and second assignments of error, Patrick argues that the trial court erred by categorizing the lake property as Melissa's separate property. He maintains that the trial court should have presumed that Melissa gifted him an interest in the lake property and that Melissa failed to overcome this presumption. Patrick further contends that, regardless of the presumption, the evidence establishes that Melissa gave him a gift of an interest in the lake property.

{¶11} "This court reviews the trial court's classification of property as marital or separate under a manifest-weight-of-the-evidence standard." *Lotz v. Lotz*, 3d Dist. Auglaize No. 2-14-06, 2014-Ohio-5625, ¶ 16. "Accordingly, we will not reverse the trial court's judgment if it is supported by some competent, credible evidence." *Id.* "'This highly deferential standard of review permits the affirmation of the trial court's judgment if there is even "some" evidence to support the court's finding.'" *Reed v. Reed*, 3d Dist. Allen No. 1-09-63, 2010-Ohio-4550, ¶ 7, quoting *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, ¶ 15 (3d Dist.).

{¶12} "In a divorce proceeding, the division of marital and separate property involves a two-step process governed by R.C. 3105.171." *Lotz* at ¶ 11. "First, the trial court must determine whether property is marital or separate property, and,

second, the trial court must equitably allocate the marital and separate property." *Id.* "Once the characterization has been made, 'the court should normally award each spouse his or her separate property and then distribute the marital estate equally unless an equal division would be inequitable.'" *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-12, 2014-Ohio-5484, ¶ 47, quoting *Barkley v. Barkley*, 119 Ohio App.3d 155, 159 (4th Dist.1997).

{¶13} "Marital property generally includes all property acquired by either party during the marriage as well as the appreciation of separate property due to the labor, monetary, or in-kind contributions of either party during the marriage." *Avent v. Avent*, 166 Ohio App.3d 104, 2006-Ohio-1861, ¶ 15 (6th Dist.), citing R.C. 3105.171(A)(3)(a)(i) and (iii). "However, marital property does not include separate property." *Id.*, citing R.C. 3105.171(A)(3)(b). Under R.C. 3105.171(A)(6)(a)(vii), separate property includes "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."

{¶14} In *Herman I*, we determined that the evidence clearly and convincingly supported the trial court's finding that the lake property was given to Melissa by her parents with the intention for it to be her separate property. *Herman I*, 2021-Ohio-3876, at ¶ 7. Accordingly, the evidence was sufficient to overcome

the presumption that the lake property was marital property ab initio. *See Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, at ¶ 13 ("Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate."). However, we indicated that Melissa's parents' intentions did not foreclose Melissa from taking some action to transform the lake property from separate property into marital property. *See Herman I* at ¶ 8-10. "Separate property can be converted to marital property if one spouse grants the other spouse an interest in the property." *Huelskamp* at ¶ 14. The conversion may be accomplished by inter vivos gift from the donor spouse to the donee spouse. *Helton v. Helton*, 114 Ohio App.3d 683, 685 (2d Dist.1996). "An inter vivos gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another." *Smith v. Shafer*, 89 Ohio App.3d 181, 183 (3d Dist.1993). "'The essential elements of an inter vivos gift are (1) an intention on the part of the donor to transfer the title and right of possession to the donee, (2) delivery by the donor to the donee, (3) relinquishment of ownership, dominion, and control over the gift by the donor, and (4) acceptance by the donee.'" *Worden v. Worden*, 3d Dist. Marion No. 9-16-54, 2017-Ohio-8019, ¶ 15, quoting *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, ¶ 20.

{¶15} In *Herman I*, we directed the trial court to consider on remand whether Melissa, upon receiving the lake property as separate property from her parents, manifested an intention to gift Patrick an interest in the lake property. With respect to this issue, the trial court found:

> As to the intent of wife to transfer said "lake property" to husband, this Court finds no merit in husband's argument. Wife testified and this court finds credible, wife did not desire to transfer said "lake property" to husband. Husband testified that it was always wife's intention that the property would belong to both of them. Wife testified that she was concerned regarding the anger of Husband but never after the transfer from her parents did wife take any overt actions, wife made no direct statements of any intentions to transfer the property. More specifically, this court would note that the intention of wife was that the daughter of the parties was going to reside there while attending college in that area. This Court would find that wife had no intentions to transfer the "lake property" to husband.

(Doc. Nos. 96, 97). Thus, the question in Patrick's first and second assignments of error is whether the evidence supports these findings and the trial court's ultimate conclusion.

{¶16} Before turning to that question, however, it is necessary to consider Patrick's claim that the trial court should have begun its analysis with a presumption that Melissa intended to give him a gift of an interest in the lake property. That is, Patrick faults the trial court for failing to properly apply the so-called "family-gift presumption," and he asks that we do so. "[U]nder the family gift presumption, if a transaction benefits a family member, the transaction is presumed to be a gift."

*Miller v. Miller*, 6th Dist. Sandusky No. S-18-19, 2018-Ohio-5285, ¶ 5 ("*Miller II*"), citing *Kovacs v. Kovacs*, 6th Dist. Sandusky No. S-09-039, 2011-Ohio-154, ¶ 12. "Thus, when the family gift presumption is applicable, the purported donor will generally bear the burden of establishing that a transaction was not a gift." *Id.*, citing *Kovacs* at ¶ 12.

{¶17} Nonetheless, "[t]he family gift presumption has not generally been applied in the context of domestic relations proceedings." *Id.* at ¶ 6. Indeed, Patrick has identified only decisions from the Sixth and Eleventh District Courts of Appeals clearly applying the family-gift presumption in the divorce-proceeding context. *Id.*; *Miller v. Miller*, 6th Dist. Sandusky No. S-16-27, 2017-Ohio-7646; *Osborn v. Osborn*, 11th Dist. Trumbull No. 2003-T-0111, 2004-Ohio-6476.[1]

{¶18} Contrasting with the family-gift presumption applied in these cases from the Sixth and Eleventh Districts is the longstanding rule of this court—that the spouse "claiming an inter vivos gift [from the alleged donor spouse] bears the burden of showing by clear and convincing evidence that such a gift was made." *Brandon v. Brandon*, 3d Dist. Mercer No. 10-08-13, 2009-Ohio-3818, ¶ 26. We have applied this rule time and time again in divorce cases and, in fact, made reference to it in *Herman I*. *Herman I*, 2021-Ohio-3876, at ¶ 9; *see, e.g.*, *Eggeman*

---

[1] As this court noted while sitting by assignment in the Sixth District, where we followed the Sixth District's family-gift presumption jurisprudence, the Eleventh District has not been consistent in applying the family-gift presumption in divorce cases. *Miller II* at ¶ 6, fn. 2 (observing that, after *Osborn*, the Eleventh District did not apply the family-gift presumption in two factually similar cases).

*v. Eggeman*, 3d Dist. Auglaize No. 2-04-06, 2004-Ohio-6050, ¶ 30; *Guffey v. Guffey*, 3d Dist. Allen No. 1-99-03, 1999 WL 378358, *2 (June 3, 1999). Moreover, this rule has been applied by a majority of our sister courts of appeals. *Johnson v. Johnson*, 2d Dist. Greene No. 2018-CA-36, 2019-Ohio-1024, ¶ 27; *Jones v. Jones*, 4th Dist. Athens No. 07CA25, 2008-Ohio-2476, ¶ 22; *Nethers v. Nethers*, 5th Dist. Guernsey No. 18 CA 000005, 2018-Ohio-4085, ¶ 16; *Hippely v. Hippely*, 7th Dist. Columbiana No. 01 CO 14, 2002-Ohio-3015, ¶ 14-15, 19; *Suppan v. Suppan*, 9th Dist. Wayne No. 17AP0015, 2018-Ohio-2569, ¶ 28; *Rank v. Rank*, 10th Dist. Franklin No. 10AP-273, 2010-Ohio-5717, ¶ 11; *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 12.

**{¶19}** In arguing for application of the family-gift presumption, Patrick provides us with no compelling reason to depart from our long-established precedent placing the burden on the donee spouse to prove the existence of an inter vivos gift from the donor spouse. After considering the matter, we find no reason to do so. Accordingly, we proceed to analyze Patrick's arguments conscious of the fact that he had the burden of proving by clear and convincing evidence that Melissa gave him a gift of an interest in the lake property.

**{¶20}** In an effort to demonstrate that Melissa did in fact intend to gift him an interest in the lake property, Patrick attacks the trial court's finding that Melissa did not "take any overt actions" or make any "direct statements of any intentions to

transfer the property." Patrick argues that the trial court failed to consider evidence that he and Melissa intended to use the lake property as their marital residence, which, Patrick claims, demonstrates Melissa's intention to give him an interest in the lake property. At the June 30, 2020 hearing concerning the status of the lake property, Patrick testified that after Melissa's parents gifted the lake property, he and Melissa resolved that they would remodel and sell their house in Ottoville. (June 30, 2020 Tr. at 117). He stated that he started some of the remodeling work. (June 30, 2020 Tr. at 117-118). In addition, Patrick testified that he intended to quit his job in Ohio and that he had actually interviewed for jobs in Indiana closer to the lake property, receiving one offer for part-time work. (June 30, 2020 Tr. at 117). He stated that he turned down the offer in part because the Ottoville house "wasn't ready to be sold." (June 30, 2020 Tr. at 117). Patrick also testified that they had moved some furnishings and other items from their home in Ottoville to the lake property. (June 30, 2020 Tr. at 118). Finally, both Patrick and his sister testified that at a birthday party in February 2019, Melissa announced that Patrick was going to leave his job and that they were going to sell the home in Ottoville and move to the lake property. (June 30, 2020 Tr. at 118, 124).

{¶21} While Melissa acknowledged making this announcement to the partygoers, she testified that these plans never materialized, and Patrick did not dispute Melissa's testimony. (June 30, 2020 Tr. at 97, 99). This is significant. As

the trial court observed in its initial July 28, 2020 judgment entry finding the lake property to be Melissa's separate property:

> Husband * * * present[ed] information regarding future expectations as to moving to the "lake property" and selling the marital home and looking for new employment in that area. Future expectations are just expectations and cannot be * * * considered in any other light unless relied upon along with action taken.

(Doc. No. 37). We agree with the trial court. While Melissa's declaration and the parties' planning might support a conclusion that Melissa could have intended to give Patrick an interest in the lake property at some unspecified future date, a valid inter vivos gift requires "an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee *then and there * * *.*" (Emphasis added.) *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21 (1936), paragraph one of the syllabus. Thus, whatever Melissa might have intended to do in the future, and whatever Patrick expected that she would do, Melissa's actions do not evidence an intention to make an immediate gift to Patrick of an interest in the lake property. Furthermore, some of the events to which Patrick testified, specifically the relocation of some furnishings to the lake property, can be accounted for as other than evidence of Melissa's donative intent. Indeed, as the trial court noted in its December 20, 2021 judgment entry, one of Patrick and Melissa's daughters was going to attend college near the lake property, and Patrick and Melissa both testified

that they moved bedroom furniture from the marital home in Ottoville to the lake property in anticipation of her move to the area. (June 30, 2020 Tr. at 99-100, 118).

{¶22} In addition, Patrick maintains that Melissa's instruction to her parents to include his name on the deed to the lake property is substantial evidence of Melissa's donative intent. However, "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H). Therefore, the presence of both spouses' names on the deed to a particular parcel of property "may be considered on the issue of whether the property is marital or separate, but it is not conclusive proof of the issue." *Ardrey v. Ardrey*, 3d Dist. Union No. 14-03-41, 2004-Ohio-2471, ¶ 12.

{¶23} Here, notwithstanding the presence of Patrick's name on the deed to the lake property, competent, credible evidence supports that Melissa did not intend to gift Patrick an interest in the lake property by directing her parents to include his name on the deed. At the June 30, 2020 hearing, Melissa testified that she had indicated to Patrick that she wanted the lake property to be in her name only, but that Patrick "was not happy with that decision." (June 30, 2020 Tr. at 57). She stated that she "felt that if [she] did what [she] wanted to do, which [was] to put that property in [her] own name, that basically [her] life would be hell." (June 30, 2020 Tr. at 57). According to Melissa, she believed that Patrick "would not have spoken

to her[,] * * * made it known to [her] that he was not happy with her, and treat[ed] [her] like crap" if she had not instructed her parents to put Patrick's name on the deed to the lake property. (June 30, 2020 Tr. at 67). Melissa further testified that when she told her parents to put Patrick's name on the deed, she "d[id] so for the benefit of [her] health" and so that she "did not have to deal with [Patrick] in a negative way." (June 30, 2020 Tr. at 90).

{¶24} Thus, Melissa's testimony established that although she desired to have the lake property deeded in her name only, she was wary of Patrick's reaction if she did so and therefore instructed her parents to include Patrick's name on the deed to the lake property for the purpose of preserving marital harmony and protecting her own wellbeing. The trial court found Melissa's testimony to be credible and concluded based on this testimony that Melissa did not intend to transfer any interest in the lake property to Patrick. As the trier of fact, the trial court was in the best position to observe Melissa and weigh her credibility, and we accordingly defer to the trial court's findings. *See Casper*, 2013-Ohio-4329, at ¶ 14; *Rank*, 2010-Ohio-5717, at ¶ 14. Consequently, we conclude that the evidence supports the trial court's determination that Melissa did not intend to transfer any interest in the lake property to Patrick. *See Casper* at ¶ 13-14 (where wife conveyed separate property to husband and herself by joint and survivorship deed, evidence supported trial court's holding that husband did not prove donative intent because

wife might have conveyed property "to placate husband and honor his request that wife transfer the property into both of their names"); *Rank* at ¶ 8, 14 (where husband not being title owner of wife's separate property "was a contentious issue amongst the parties through their marriage," wife's testimony that she did not intend to transfer property rights when she executed joint deed only months before separation was sufficient credible evidence to defeat husband's claim of gift).

{¶25} Patrick had the burden of proving by clear and convincing evidence that Melissa intended to give him a gift of an interest in the lake property, thereby transmuting her separate property into marital property. As competent, credible evidence supports the trial court's finding that Melissa did not intend to give Patrick any interest in the lake property, Patrick failed to sustain his burden. Therefore, we conclude that the trial court did not err by determining that the lake property is Melissa's separate property.

{¶26} Patrick's first and second assignments of error are overruled.

**B. Patrick's Third Assignment of Error:  Does the evidence support the trial court's valuation of the 2006 Suburban?**

{¶27} In his third assignment of error, Patrick contends that the trial court erred by assigning a valuation of $4,500 to the 2006 Suburban.

{¶28} In divorce cases, "a trial court must generally assign and consider the values of marital assets in order to equitably divide those assets." *Schwarck v. Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 26. "The valuation

of property in a divorce case is a question of fact." *Id.* at ¶ 27. "Accordingly, a trial court's decision pertaining to the valuation of property will be reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence." *Id.* "If the parties to the divorce submit evidence in support of conflicting valuations, the trial court 'may believe all, part, or none of any witness's testimony.'" *Mousa v. Saad*, 3d Dist. Marion No. 9-18-12, 2019-Ohio-742, ¶ 14, quoting *Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, at ¶ 27.

{¶29} Patrick claims there is no evidence in the record supporting the trial court's valuation. Admittedly, limited evidence was presented to the trial court regarding the value of the 2006 Suburban. On December 2, 2020, at the second part of the final divorce hearing, the only testimony relating to the 2006 Suburban was Patrick's testimony that the vehicle "barely has a bumper left, paint's all coming off of it, [and] it has about 200,000 miles on it." (Dec. 2, 2020 Tr. at 63). However, Patrick's "Personal History and Financial Affidavit," which Patrick submitted as an exhibit at the hearing, listed the estimated value of the 2006 Suburban as $4,500. (Dec. 2, 2020 Tr. at 96); (Patrick's Ex. 3). Melissa's affidavit of property likewise provided a valuation of $4,500 for the 2006 Suburban. (Doc. No. 3). Given the meager evidence offered concerning the value of the 2006 Suburban, as well as the parties' apparent concurrence as to its value, we cannot say that the trial court erred

by fixing the value of the 2006 Suburban at $4,500. We conclude that competent, credible evidence supports the trial court's valuation of the 2006 Suburban and that the valuation is not against the manifest weight of the evidence.

**{¶30}** Patrick's third assignment of error is overruled.

**C. Melissa's First Assignment of Error: Did the trial court's method of dividing Melissa's 401k account constitute an abuse of discretion?**

**{¶31}** In her first assignment of error, Melissa argues the trial court abused its discretion by dividing the marital portion of her 401k account using the method we sustained in *Herman I*. Melissa maintains that she and Patrick had agreed to equally divide all the marital property, including her 401k account, and that the trial court intended to do just that. Melissa argues that the trial court's method of dividing her 401k account does not achieve an equal division of that asset and instead "results in an inequitable division" that "contradicts the stipulations of the parties and the stated intentions of the trial court."

**{¶32}** "Generally, trial courts should divide marital assets and debts equally between the spouses." *Fogt v. Fogt*, 3d Dist. Defiance No. 4-18-10, 2019-Ohio-1403, ¶ 20, citing R.C. 3105.171(C)(1). However, where an equal division would be inequitable, "the trial court must 'divide the marital * * * property equitably between the spouses * * *.'" *Siferd v. Siferd*, 3d Dist. Hancock No. 5-17-04, 2017-Ohio-8624, ¶ 25, quoting R.C. 3105.171(B). The trial court "has broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry*

*v. Cherry*, 66 Ohio St.2d 348 (1981), paragraph two of the syllabus. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶33} In this appeal, Melissa maintains that the trial court's choice of method for dividing her 401k account was an abuse of discretion. Melissa insists that, rather than giving her the first $62,611.53 from her 401k account and then splitting the remainder of the account equally between her and Patrick, the trial court should have instead divided her 401k into two equal shares and then subtracted $62,611.53 from Patrick's individual share. Thus, Melissa renews the argument that this court explicitly rejected in *Herman I*. There, we observed that "[a]lthough Melissa claims that the trial court's method resulted in her getting less money, which it does, it is the equitable division." *Herman I*, 2021-Ohio-3876, at ¶ 16. We further asserted that "us[ing] the method Melissa suggests would result in an inequitable division of the property and a windfall to her." *Id.*

{¶34} To illustrate the outcome of the trial court's method as compared to the outcome of Melissa's proposed method, we offered the following example in *Herman I*:

Example of Calculation of Offset of Home Equity[2]

---

[2] In *Herman I*, we referred to the offset as the "home equity offset" and assigned it a value of $51,684.50. This was a somewhat confusing choice of words. As noted in the opening paragraphs of this opinion, the offset at issue in *Herman I* was determined by the trial court to be $62,088.96. Moreover, the amount of the offset was based on the value of Patrick's share of *all* the marital property, not just the value of his share of the equity in the marital residence. Nevertheless, for the sake of clarity and consistency in explaining the calculations, we will continue using the same terminology and dollar amounts we used in *Herman I*.

Value of Home = $171,500 - $68,131 (mortgage) = $103,369 (equity)

Patrick's Equity = $51,684.50, Melissa's Equity = $51,684.50

Melissa's 401K with example value of $200,000 (no real value provided).

Trial Court's Method of Evaluation:

Melissa gets first $51,684.50 from 401K, leaving $148,315.50 to be divided

Melissa = $74,157.75 + $51,684.50 (home equity offset) = $125,842.25

Patrick = [$74,157.75]$^3$ + $51,684.50 (home equity) = $125,842.25

Melissa's Method of Evaluation:

Melissa = $100,000 + $51,684.50 (home equity offset) = $151,684.50

Patrick = $100,000 - $51,684.50 (offset) + $51,684.50 (home equity) = $100,000

*Id.* Thus, at a passing glance, our example appeared to confirm that the trial court's method resulted in an equal division of marital assets between Melissa and Patrick, rather than a boon to Melissa as would have resulted under her proposed method.

{¶35} But on closer examination, our example was flawed. In our example, there was $303,369 in marital assets to be distributed between Melissa and Patrick. This amount is the sum of the $103,369 equity in the home plus the $200,000

---

[3] Owing to a typographical error, this figure appeared as $74,147.75 in our opinion in *Herman I*.

example amount of the 401k.  To achieve an equal distribution of assets, each party would be entitled to half of this sum, i.e., $151,684.50.  However, in both our illustration of the trial court's method of evaluation and our illustration of Melissa's method of evaluation, only $251,684.50 was divided between Melissa and Patrick.  Unaccounted for in our example was $51,684.50—an amount equivalent to Melissa's home equity offset or, alternatively, one-half of the home equity.  The reason for this discrepancy is that while our example incorporated Melissa's home equity offset, it did not provide for the fact that Patrick, in retaining possession of the home, was also gaining all the equity in the home.  Thus, Melissa's home equity offset is a function of Patrick receiving the entirety of the home equity, and it exists only where the home equity is allocated entirely to Patrick.  Accordingly, wherever Melissa is credited with her home equity offset, Patrick must also be credited for the entire amount of the home equity.

{¶36} If we had properly accounted for the fact that Patrick was receiving the entirety of the home equity, our example would have looked like this:

Example of Calculation of Offset of Home Equity

Value of Home = $171,500 - $68,131 (mortgage) = $103,369 (equity)

Patrick's Equity = $51,684.50, Melissa's Equity = $51,684.50
**Because Patrick is receiving the home with all of its equity, Patrick owes Melissa $51,684.50 (home equity offset)**

Melissa's 401K with example value of $200,000 (no real value provided).

Trial Court's Method of Evaluation:

Melissa gets first $51,684.50 from 401K, leaving $148,315.50 to be divided

Melissa = $74,157.75 + $51,684.50 (home equity offset) = $125,842.25

Patrick = $74,157.75 + **$103,369 (entire home equity)** = **$177,526.75**

Melissa's Method of Evaluation:

Melissa = $100,000 + $51,684.50 (home equity offset) = $151,684.50

Patrick = $100,000 - $51,684.50 (offset) + **$103,369 (entire home equity)** = **$151,684.50**

Thus, contrary to our assertion in *Herman I*, it is the trial court's method of evaluation, not Melissa's, that results in a windfall to Patrick. Melissa does not benefit from that windfall, as we claimed in *Herman I*. Instead, it is Patrick who receives a disproportionate share of the marital assets—$51,684.50 more than Melissa and $25,842.25 more than he would receive if the marital assets were divided equally. The reason for this is that by taking the offset off the top of Melissa's 401k account and then dividing the remainder of the account equally, half of the amount that Patrick owed was paid using money that actually belonged to Melissa.[4]

---

[4] As an illustration, we offer this simple example: Jack and Jill open a joint bank account. Jack and Jill each deposit $50 into the account. Jack also owes Jill $50 from a separate transaction. Jack and Jill decide to simultaneously close their bank account and discharge the debt. If Jill gets the first $50 from the bank account and the remaining balance is then divided equally between Jack and Jill, Jill receives $75 and Jack receives

**{¶37}** Had the trial court intended to effect an equitable, albeit unequal, division of marital assets, its method might have been a permissible way to do so. Yet, from the trial court's judgment entries, this was not the trial court's intent. For example, in its December 22, 2020 judgment entry, which we reviewed in *Herman I*, the trial court stated that the home equity offset was necessary "[i]n order to *equalize* the equity and/or debt of the parties." (Emphasis added.) (Doc. Nos. 57, 58). Furthermore, in discussing whether to award spousal support, the trial court "note[d] that as it pertains to the distribution of the assets, each party is receiving an *equalized* portion of assets including real estate, retirement accounts, personal property and debts." (Emphasis added.) (Doc. Nos. 57, 58). Finally, although the trial court referred to an exhibit it prepared, Court's Exhibit 3, as a "Distribution List of assets and debts for *equitable* distribution," Court's Exhibit 3, which was used to calculate Melissa's home equity offset, showed an *equal* distribution of assets and debts when the offset is factored in. (Emphasis added.) (Doc. Nos. 57, 58). The trial court's December 20, 2021 superseding judgment entry contained all these same findings and references. (Doc. Nos. 96, 97). Thus, the relevant judgment

---

$25. However, this results in Jill receiving $25 less than the $100 she initially expended ($50 into the bank account and $50 to Jack). As joint owner of and equal contributor to the bank account, Jill owned half of the $50 used to repay Jack's debt; only half of the debt was repaid using funds belonging to Jack. Jack thus avoids fully repaying the debt and takes $25 more than the $0 that he should receive (his $50 bank account deposit minus the $50 he owes Jill). To ensure that Jill receives the entire value of her interest in the bank account as well as full satisfaction of the debt, the bank account must first be divided into one $50 share for Jill and one $50 share for Jack. Jack's $50 share may then be used to repay his debt to Jill, resulting in Jill receiving $100 from the bank account and Jack receiving $0.

entries establish that the trial court envisioned an equal division of Melissa and Patrick's marital property.

**{¶38}** Yet, the trial court's method of dividing Melissa's 401k account does not result in an equal distribution of marital property. Instead, it results in Patrick receiving a disproportionately large share of marital property. Hence, insofar as the trial court intended to equally divide Melissa and Patrick's marital assets but adopted a method of dividing their property that actually resulted in an unequal distribution, the trial court abused its discretion. *Gilsdorf v. Gilsdorf*, 3d Dist. Marion No. 9-13-34, 2014-Ohio-5000, ¶ 16 (concluding that the trial court abused its discretion by "ordering an equal division of assets but dividing the assets in an unequal manner * * * contrary to the trial court's stated intentions"). In concluding otherwise in *Herman I*, it appears we erred.

**{¶39}** Melissa requests that we reexamine our holding in *Herman I* and conclude that the trial court abused its discretion by dividing her 401k account in a way that does not result in an equal distribution of marital property. While Patrick does not dispute that the trial court's method results in him receiving an unequal share of marital property at Melissa's expense, he counters that Melissa "is attempting to relitigate an issue which was already specifically decided" and that the law of the case doctrine bars our reconsideration of the issue.

{¶40} The law of the case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). "Thus, the decision of the appellate court in a prior appeal must ordinarily be followed in a later appeal in the same case and court." *Pavlides v. Niles Gun Show, Inc.*, 112 Ohio App.3d 609, 615 (5th Dist.1996). "The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, ¶ 15.

{¶41} However, the law of the case doctrine "is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Nolan* at 3. Accordingly, "[a]n appellate court may choose to re-examine the law of the case it has itself previously created if that is the only means to avoid injustice." *Pavlides* at 615. Even so, "such reexaminations must not be undertaken lightly by an appellate court, nor encouraged as a common course of conduct for unsuccessful litigants." *Weaver v. Motorists Mut. Ins. Co.*, 68 Ohio App.3d 547, 549 (2d Dist.1990).

{¶42} Because of our misstep in *Herman I*, Melissa will receive considerably less than she would have received had the trial court utilized her method of dividing

and offsetting her 401k account. By the same token, Patrick will receive considerably more than he would have received under Melissa's method. Considering the effect of our decision in *Herman I*, under the facts and circumstances present here, neither the integrity of this court nor the law is served by our adhering to a previous decision that we now know to be in error.

**{¶43}** Our decision in *Herman I* was flawed, and in a case like this, when a higher court's mandate is not involved, application of the law of the case doctrine is, in essence, discretionary. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" (quotation citation omitted)); *State v. Kelly*, 8th Dist. Cuyahoga No. 89393, 2007-Ohio-6838, ¶ 15 (the law of the case doctrine is discretionary in application, subject to exceptions, including when "the earlier decision is clearly erroneous and would work a manifest injustice") (citations omitted).

**{¶44}** In the instant case, we find that the mathematical error in the method of dividing the marital property made by the trial court and erroneously ratified by this Court in *Herman I* is sufficiently within the concept of extraordinary circumstances and manifest injustice to overcome the doctrine's application. *See*

*Pavlides*, 112 Ohio App.3d at 615 ("An appellate court may choose to re-examine the law of the case it has itself previously created if that is the only means to avoid injustice.").

**{¶45}** This decision is consonant with the law of the case doctrine in cases where it *will not be applied so as to achieve unjust results* (emphasis added to the language quoted from *Nolan, supra*). *See Hawley v. Ritley*, 35 Ohio St.3d 157, 160-161 (1988) (affirming the appellate court's ruling applying the law of the case doctrine, but also concluding that "affirmance of the decision of the court of appeals below by applying the doctrine does not achieve an unjust result"); *L.G. Harris Family Ltd. Partnership I v. 905 S. Main St. Englewood, L.L.C.*, 2d Dist. Montgomery No. 26682, 2016-Ohio-7242, ¶ 58 (appellate court decision became law of the case when appellant did not appeal to the Supreme Court of Ohio and there was no injustice in following it); *Meeks v. Meeks*, 10th Dist. Franklin No. 06AP-1186, 2008-Ohio-2015, ¶ 22 (after recognizing its ability to reexamine a prior holding in the same divorce case and discussing its prior opinion, appellate court found applying the law of the case would not result in an injustice); *Carr Supply, Inc. v. Rockford Homes, Inc.*, 10th Dist. Franklin No. 02AP-960, 2003-Ohio-4676, ¶ 20 (applying the law of the case where appellant failed to move for reconsideration after the appellate decision and where appellant failed to prove that an injustice would result from its application). We further find a similar situation that actually

occurred in a decision of another state appellate court, wherein the appellate court applied the manifest injustice exception to the law of the case doctrine so that the trial court could make a correction of a mathematical error in a prior final judgment in the same case on remand. *Logue v. Logue*, 766 So.2d 313 (Fla. 4th DCA 2000).

{¶46} In sum, as a result of our flawed decision in *Herman I*, the trial court, on remand, used the same erroneous method to offset and divide Melissa's 401k account. Because of the manifest injustice that would occur should we knowingly continue to let this mathematical error in the trial court's method of evaluation go uncorrected, we sustain Melissa's first assignment of error so that the trial court can make the proper correction of the property division on remand.

**D. Melissa's Second Assignment of Error: Did the trial court abuse its discretion by ordering Melissa to pay spousal support to Patrick?**

{¶47} In her second assignment of error, Melissa maintains that the trial court abused its discretion by ordering her to pay spousal support to Patrick. Melissa argues that "the trial court's findings regarding the reasonableness of the spousal support order are not supported by the record" and that "the trial court failed to provide any details as to how it arrived at the amount of the support and the term of the award."

{¶48} To begin, we must address whether our disposition of Melissa's first assignment of error based upon our flawed decision in *Herman I* affects our consideration of Melissa's second assignment of error. As in his response to

Melissa's first assignment of error, Patrick again argues that "to the extent that Melissa's assignment of error requests the Court to reconsider whether spousal support is appropriate, this Court should overrule Melissa's assignment of error as being precluded under the doctrine of the law of the case." He suggests that, in *Herman I,* we "instructed the trial court to recalculate the *amount* of spousal support, based on its correction of the errors in the division of property, not to reconsider whether spousal support is appropriate."

{¶49} In *Herman I*, we did refer to the amount of the spousal support award and the need for the trial court to "recalculate" the award on remand while omitting a discussion of whether it was reasonable and appropriate to award Patrick spousal support. However, our decision in *Herman I* should be understood as deferring determination of the reasonableness and appropriateness of spousal support pending a proper equitable division of marital property, which could have affected the trial court's assessment of whether to award spousal support to Patrick. "The law-of-the-case doctrine '"comes into play only with respect to issues previously determined."'" *Banker's Choice, L.L.C. v. Cincinnati Zoning Bd. of Appeals*, 1st Dist. Hamilton No. C-200117, 2021-Ohio-1206, ¶ 16, quoting *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, ¶ 16, quoting *Quern v. Jordan*, 440 U.S. 332, 347, 99 S.Ct. 1139 (1979), fn. 18. Therefore, the law of the case doctrine does not

bar us from examining any facet of the trial court's decision to award spousal support to Patrick.

{¶50} R.C. 3105.18 governs the award of spousal support in divorce cases. "'[S]pousal support' means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and for support of the spouse or former spouse." R.C. 3105.18(A). "In divorce and legal separation proceedings, upon the request of either party and *after* the court determines the division or disbursement of property under [R.C. 3105.171], the court of common pleas may award reasonable spousal support to either party." (Emphasis added.) R.C. 3105.18(B); *see* R.C. 3105.171(C)(3) ("The court shall provide for an equitable division of marital property * * * prior to making any award of spousal support * * *.").

{¶51} Here, by sustaining Melissa's first assignment of error and directing the trial court to use a different method of offsetting and dividing Melissa's 401k account, we have altered the division of Melissa and Patrick's marital property. The distribution of marital assets having been changed, the trial court must reexamine its decision awarding spousal support to Patrick. *See Herman I*, 2021-Ohio-3876, at ¶ 17; *Salmon v. Salmon*, 9th Dist. Summit No. 22745, 2006-Ohio-1557, ¶ 24; *Young v. Young*, 146 Ohio App.3d 34, 38 (7th Dist.2001). That said, we take no position on whether the trial court should ultimately award spousal support or on

the amount or duration of such an award. We simply find and direct that the trial court must necessarily revisit the issue of spousal support, considering that the case is already being remanded for a corrected and predicate determination of the property division as per the directive of R.C. 3105.18(B).

{¶52} For these reasons, Melissa's second assignment of error is also sustained.

**E. Melissa's Third Assignment of Error: Did the trial court err by failing to incorporate all of the parties' stipulations into its final judgment entry?**

{¶53} In her third assignment of error, Melissa argues that the trial court erred by failing to incorporate all of the parties' stipulations into its December 20, 2021 judgment entry. On October 1, 2020, at the first part of the final divorce hearing, Melissa's counsel discussed the parties' stipulations, which apparently included a stipulation regarding the disposition of sensitive videos and photographs. Her counsel represented that the parties had agreed that "any videos that [the] parties may have of each other, any videos or copies thereof, pictures, videos, et cetera, copies thereof, will not be disseminated to any third party. If they have copies or videos of each other that would place them in what would be an embarrassing or compromising position, they agree to delete or cease those videos." (Oct. 1, 2020 Tr. at 7). However, Melissa's counsel later stated on the record that he did not believe there was a stipulation concerning the sensitive videos and photographs, so it is unclear whether there was a stipulation. (Oct. 1, 2020 Tr. at 55). Melissa

-33-

testified that she wanted the trial court to issue an order limiting the possession or dissemination of any such media. (Oct. 1, 2020 Tr. at 55-56).

{¶54} Regardless of whether there was a stipulation, the trial court failed to address these items and their ultimate disposition in its December 20, 2021 judgment entry. These items were arguably marital property, and the trial court must fully address all of the parties' marital property when dividing the property. *See Smoyer v. Smoyer*, 10th Dist. Franklin No. 18AP-365, 2019-Ohio-3461, ¶ 30-34. Thus, to the extent the trial court failed to make some disposition of these items, the trial court erred. On remand, the trial court must make provision for these items.

{¶55} Melissa's third assignment of error is sustained.

### IV. Conclusion

{¶56} For the foregoing reasons, Patrick's assignments of error are overruled. However, having found error prejudicial to Melissa with respect to her first, second, and third assignments of error, these assignments of error are sustained. Consequently, we reverse the judgment of the Putnam County Court of Common Pleas, Domestic Relations Division, as to the issues of the division of the marital property, spousal support, and the videos and photographs and remand for further proceedings consistent with this opinion. In all other respects, we affirm.

*Judgment Affirmed in Part, Reversed*
*in Part and Cause Remanded*

**MILLER, J., SHAW, J. and WILLAMOWSKI, J., concur.**